# VACCARO *v.* CICALLA AND CICALLA *v.* VACCARO.

## (*Jackson.* May —, 1890.)

1. CHANCERY COURT. *Jurisdiction over trusts. Decrees valid, when.*

Decrees of Chancery Court are valid, when regularly entered, without objection to Court's jurisdiction, in a suit brought by a trustee against his *cestui que trust* for the avowed purpose of obtaining approval by the Court of his current administration of a clear and unambiguous trust as a precaution against future litigation, no other cause for invoking the assistance of the Court being apparent or suggested.

Cases cited: Kerr *v.* White, 9 Bax., 168; Caruthers *v.* Caruthers, 2 Lea, 71; Bowling *v.* Scales, 2 Tenn. Ch., 63.

2. SAME. *Same. Infants bound by the decrees.*

And infant *cestui que trust*, who are regularly before the Court, are concluded by such decrees equally with adults, except that they have longer time, by reason of their disability, to institute suit for relief.

Cases cited and approved: Rogers *v.* Clark, 5 Sneed, 665; Winchester *v.* Winchester, 1 Head, 460.

3. SAME. *Same. Trustee's settlements; their effect. How impeached.*

And settlements of the trustee, made and confirmed in due course of such legal proceedings, have the effect of decrees, and import, not mere *prima facie* correctness, but absolute verity; and such settlements cannot be impeached, even by infant parties, except in the manner and for the causes admissible for impeachment of regular decrees.

Cases cited and distinguished: McGavock *v.* Bell, 3 Cold., 517; Livingston *v.* Noe, 1 Lea, 55; McCown *v.* Moores, 12 Lea, 635.

4. SAME. *Same. Settlements not reached by bill to surcharge and falsify.*

And trustee's settlements, thus made and confirmed, are not open to attack by mere bill to surcharge and falsify them, which does not attack them as decrees.

Vaccaro *v.* Cicalla and Cicalla *v.* Vaccaro.

5. SAME. *Same. Trustee's settlements with County Court, their effect.*

Settlements made by trustee with the County Court, in his character as executor, are treated as only *prima facie* correct, and can be successfully attacked by bill to surcharge and falsify them.

Code cited: § 4535 (M. & V.); § 3786 (T. & S.).

Case cited and approved: Matlock *v.* Rice, 6 Heis., 33.

6. SAME. *Has no power to alter decree at subsequent term.*

Chancery Court has no power to alter even an interlocutory decree at a term subsequent to its rendition.

7. APPEAL. *Brings up interlocutory decrees for review.*

An appeal in a chancery cause brings up the whole record, including interlocutory decrees, for review, even where it is granted by an exercise of the Chancellor's discretion under § 3874 (M. & V.) Code from a decree not final, but merely determining the principles involved and ordering an account.

Code cited: § 3874 (M. & V.); § 3157 (T. & S.).

Case cited and approved: Bomar *v.* Hagler, 7 Lea, 85.

8. TRUSTEE. *Allowance of attorney fees. Improper, when.*

Trustee is not entitled to credit for compensation paid to an attorney out of the trust fund, either for services that he should have performed himself, or for services rendered in a suit brought by the trustee improvidently and for his own protection.

9. SAME. *Same. Proper, when.*

But the trustee is entitled to have reasonable fees of counsel, incurred for necessary advice and litigation, paid out of the trust estate.

10. SAME. *Not chargeable with interest, when.*

A faithful and honest trustee will not be charged with more interest than he received, where, though guilty of a technical breach of trust, it appears that he acted in good faith, was diligent in making investments of the trust funds and inflicted no loss by his unauthorized act.

11. SAME. *Reasonable time for making investments of the trust fund.*

Requirement that trustee shall in future invest all trust funds within three months after receiving them held reasonable upon the facts of this case.

12. GUARDIAN AND WARD. *Guardian of ward's person not appointed, when.*

The Court declined to appoint a guardian for three female infants, between 14 and 21 years of age, whose entire estate was in the hands of an honest and capable testamentary trustee, who, though never having qualified as guardian, had faithfully performed for them all the duties of that office.

Cases cited: Bowling *v.* Scales, 2 Tenn. Ch., 63; Kerr *v.* White, 9 Bax., 161.

---

### FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

H. C. KING and LEE THORNTON for Vaccaro.

U. W. MILLER and MALONE & MALONE for Cicalla.

W. M. SMITH, Sp. J. Paul Cicalla died in Memphis October 6, 1878, leaving a will, which was admitted to probate December 2, 1878. B. Vaccaro, the complainant in the first cause named, which, for convenience, will be styled the "original cause," was named as executor, and was qualified on the day of the probate. After making several specific legacies, the will is as follows: "I give, bequeath, and devise to my three children— Delida, Parmelia, and Aurelia—all my property, of every description whatever, to be equally divided

5—5 P

between said three children, share and share alike. I hereby name Bartholomew Vaccaro as my executor, having full confidence in his ability and integrity, and request him to accept the trust. I hereby, in this my will and testament, give him full authority to use, control, or dispose of my real estate for the benefit of my three above named children as in his judgment may seem best for the interest of the estate and of my children." Omitting a clause not necessary to quote, the will continues thus: "Should either of my children marry before reaching the age of twenty-one, I hereby direct my executor to pay over to such child or children entering matrimony her or their share of the property which is herein and hereby bequeathed."

At the death of the testator Aurelia was about ten years old, Parmelia about five, and Delida about three. Aurelia was then in Italy with friends, and has never returned to America. The other two were and have continued in Memphis. The personalty of the estate was not great, but the realty was quite valuable. The bond as executor was given to cover the personalty only.

The original bill was filed April 2, 1879. It recites that complainant, the executor, had filed his inventory and report of sales, and had made his first settlement as executor in the Probate Court. The record of the Probate Court on file shows that this first settlement was made March 28, 1879, and confirmed July 11, 1879.

The settlement is not embraced in the probate

record, but is set out in complainant's second settlement in the Chancery Court. There seems to have been no other settlement of the accounts of the executor in the Probate Court, nor any other proceedings there, except a citation issued September 5 and served September 8, 1881, to the executor to appear and settle his accounts. The Clerk certifies that, after this, nothing appears except a memorandum showing a notice by mail to Vaccaro to appear and settle, and a note from his attorney to the Clerk, dated May 11, 1882, stating that the administration of the estate of Cicalla "is now being wound up in the Chancery Court in case of *Vaccaro, Ex'r,* v. *Cicalla.*" The bill alleges that complainant is advised that, by the terms of the will, he "is authorized and empowered to take the control, possession, and management of testator's real estate, with unlimited power of control and disposition, for the use and benefit of his children, and also that the control, maintenance, and education of the children are devolved on him as trustee under the will."

He then alleges that he reluctantly consented to accept the trust, and did so merely to oblige an old friend and brother Italian. The bill continues as follows: "And to prevent mistakes in the execution of the trusts, and to close all transactions as he goes along in the execution of his duties under the will as executor and trustee, and to have the judgment of the Court as *res adjudicata*, without waiting for the infant devisees and lega-

tees to become of age, when perhaps complainant himself may be dead, he files this bill," etc.

The prayer is ",that the will be construed, and the complainant instructed as to the proper execution of the trusts devolved on him; that the interest of the several residuary devisees and legatees under the will, and in future accretions of the estate, be defined; that complainant be instructed and directed as to the amounts to be expended on the infant children in their support and education from month to month and year to year; that complainant be allowed to make frequent settlements of his trusts with the Master of this Court, and have the protection of regular decrees thereon, which shall at all times be binding on said infants as *res adjudicata.*"

It will be observed that the complainant does not seem to have any doubts as to his duties and powers, or to suggest any difficulties in the will to be construed. The object of the bill seems to have been to have the whole administration in the Chancery Court, in order that complainant might have "the protection of regular decrees," which he was advised would always be binding on the infants. His object seems to have been to close every thing behind him, and this object is very candidly stated.

The infants were brought into Court as defendants, and a guardian *ad litem* appointed for them. He filed a formal answer, raising no question as to the propriety of the suit. No order was made

transferring the administration of the personalty from the Probate Court, but it seems to have been assumed that the filing of the bill, and taking jurisdiction by the Chancery Court necessarily transferred the administration. On May 20, 1879, an order of reference was made to the Master, directing him: Firstly, to make a settlement with complainant of his accounts as trustee under the will; secondly, to report what would be a fair and reasonable allowance for the support and education of the infant defendants from month to month; thirdly, what would be a reasonable compensation to complainant for the care, custody, and superintendence of the education and support of said infants per annum; fourthly, what would be a fair and reasonable allowance to the complainant as trustee in the preservation and management of the real estate, and collection and disbursement of the rents.

June 27, 1879, the first settlement as trustee in the management of the real estate was filed. This does not embrace any account of the personalty. Up to this period it appears that complainant had intended to make a distinction between his duties as executor and as trustee; for he says, in a deposition given in support of this first settlement, that he had made a partial settlement as executor in the Probate Court, and would make a final settlement therein as soon as practicable. But no such final settlement was made, and the whole administration was transferred to the Chancery

Court. The Master reported this settlement correct, and fixed the compensation of complainant for the personal care of the resident infants at $240 per annum, and ten per cent. of collections of rent for managing the real estate. The second settlement was not made until March 27, 1883. No reason is given for the delay; but no exception was taken on that account, or on any other, and it was confirmed. In this statement of accounts, which embraces the transactions of three years, the settlement made in the Probate Court in 1879 is set out. After this the settlements continued from year to year, being made and confirmed without exception, and usually on the deposition of complainant and the statement of his attorney. It is proper to state, however, that, with the exception of the matters hereafter alluded to, there seems to be nothing to object to in these settlements; and the management of the estate appears to have been prudently conducted, and to have resulted well. In each settlement $240 per annum for the care of the persons of the infants is allowed, in addition to the compensation allowed by the Chancellor for the management of the real estate, viz., ten per cent. on rents, and five per cent. on sales; several sales of real estate having been made before the suit of the infants was begun. Two hundred and fifty dollars per annum for counsel fees was allowed, except that for the first year, from December 1, 1878, to December 1, 1879, $350 was allowed. In addition to this, $175 was allowed for counsel

fees shown by proof to have been rendered in other suits for and against the estate. During the pendency of this suit several petitions were filed by the complainant, asking that sales of real estate be made or confirmed, and asking for instructions as to investments. And, upon these applications, sales were made or confirmed, and investments ordered.

On December 24, 1887, the three infants, by their next friend, Peter Sanguineti, a resident of Italy, who also claims to be the guardian in Italy of the children—they having property there—filed an original bill attacking the management of the estate by Vaccaro, and complaining specially of the allowance of $240 per annum ·for the care of ·the persons of the infants, and of the annual allowance for attorney's fees, and also of the costs of the Court proceedings, claiming that they were unnecessary. The bill also prayed for the appointment of a guardian of the infants, and that after the appointment the accounts and settlements of Vaccaro should be examined and corrected, and that he should be required to give bond as executor or trustee sufficient to cover the large amount in his hands arising from rents and the sales of real estate. The bill also prayed that Sanguineti, the Italian guardian, should be permitted to remove the resident infants to Italy, the domicile of their sister. It also charged that Vaccaro was using the money of the estate in the business of the firm of which he is a member. The oath of

Vaccaro is waived. He answered denying the material allegations of the bill, and insisting on the correctness of his charges and accounts.

After the filing of this bill the seventh settlement was filed and confirmed without exception. On December 21, 1888, a motion for the appointment of a guardian made on the bill of the infants was overruled, with leave to renew the application in the future. In the order overruling this motion Vaccaro was required to give bond as executor and trustee in the sum of $40,000, with which order he at once complied; and the Chancellor, also in the same decree, ordered that the suit of the infants should be prosecuted with diligence, in order that a full investigation of the charges might be had. The eighth settlement was filed March 29, 1889. The Master reported thereon, and exceptions were filed by both sides. On September 27, 1889, an amended bill was filed on behalf of the infants, repeating the charges of their original bill, and seeking more distinctly to surcharge and falsify the settlements of Vaccaro.

The two causes were heard together on November 15, 1889, and, by order of the Chancellor, consolidated. The decree was that the Court had jurisdiction to entertain the original bill, but that the decrees made confirming the settlements are only *prima facie* correct; and subject to be attacked and shown incorrect by the bill of the infants. The decree will be further referred to only as to the points now controverted—viz., the allowance of

compensation for the care of the persons of the infants, the allowance of attorney's fees as a charge on the trust fund, the liability of Vaccaro for interest on the trust fund while not invested, and the application for the appointment of a guardian for the infants. The Chancellor disallowed all credits for attorney's fees. He also decreed that Vaccaro should be charged with interest on any amount of the trust fund remaining in his hands uninvested longer than three months, the charge to begin at the expiration of three months. The allowance for the care of the infants was set aside, and a reference ordered to ascertain what amount should be allowed; and it was determined that no order could be made removing the infants to Italy, but that a guardian should be appointed for them. A reference was made to the Master to report a suitable person for guardian, with directions to have the infants before him, "and if they have no objection to the trustee, and he will accept, that he will be appointed, the Court finding no reason to withhold from him the custody of the persons of the infants." The Chancellor further directed that in taking the account the Master should recast the accounts from the beginning to the end, including matters embraced in the probate settlement; but the settlements are only to be disturbed as to the matters mentioned, and the necessary effect they will have on the accounts. From this decree the Chancellor allowed complainant in the original bill an appeal. The appeal

was perfected, and assignments of error in great detail have been made.

The only assignments deemed necessary to be noticed, and those relied on in the argument of the cause in this Court, are as follows: That the Chancellor erred in holding the settlements only *prima facie* evidence of the correctness of the accounts, because, being confirmed by decrees of Court, infants are bound by them as well as persons *sui juris*, and also because the Chancellor cannot at one term set aside interlocutory decrees made at former terms. Next, that, if the settlements can be re-opened, there was error in setting aside the allowance to the trustee for care of the persons of the infants, and for attorney's fees, and in charging Vaccaro with interest; and, lastly, that there was error in ordering the appointment of a guardian, the will giving Vaccaro control of the property, if not of the persons, of the infants until marriage or arrival at age. We now proceed to dispose of these assignments of error in the order named.

The Chancellor held that the Court had jurisdiction of the cause. It cannot be doubted that a Court of Chancery has jurisdiction of trusts, and of the management of trust estates. 3 Pom. Eq. Jur., 114, 115.

But the objection which seems to have been made on the hearing was that the Court had not jurisdiction, or at least should not entertain jurisdiction, on behalf of a trustee of a plain and un-

ambiguous trust. Whether a testamentary trustee should be required to make settlements and administer the trust under the direction of a Court of Equity, on the application of the beneficiaries, was left an open question in *Kerr* v. *White*, 9 Bax., at page 168; but in *Bowling* v. *Scales*, 2 Tenn. Ch., 63, such a bill was entertained, seemingly without doubt; and in *Caruthers* v. *Caruthers*, 2 Lea, 71, an administrator with the will annexed, the will giving "full power to sell and convey real or personal property" for paying debts and supporting the testator's children, filed a bill for the purpose of executing the trusts of the will. No question as to the jurisdiction of the Court to entertain the bill was made. We have no doubt that the Court had jurisdiction of the cause; and, having jurisdiction, its decrees must be treated as other decrees in equity, although the bill may have been improvidently filed. By such decrees, infants regularly before the Court, as these infant defendants were, are bound as though they were adults, with the qualification that, after coming of age, they may impeach them by bill of review for error apparent on the face of the decrees, or may prosecute a writ of error within the time after majority fixed for adults from the decrees. *Rogers* v. *Clark*, 5 Sneed, 665; *Winchester* v. *Winchester*, 1 Head, 460.

The decrees made in the original cause confirming the settlements were regularly made *inter partes*, and must stand on the same footing as other de-

crees of the Chancery Court. They are not like the *ex parte* settlements of guardians and personal representatives made in the County Court, which, by statute, are only *prima facie* correct. The bill of the infants can be treated only as an original bill to surcharge and falsify—and thus re-open— these settlements. It does not charge that the decrees confirming the settlements are erroneous. The infants being bound by the decrees of confirmation, the accounts cannot be re-examined on their bill, fraud in obtaining the decrees not being charged or proved; and, though the decrees are interlocutory, the Chancellor could not, at a subsequent term, set them aside.

Counsel for the infants earnestly insist that the cases of *McGavock* v. *Bell*, 3 Cold., 517; *Livingston* v. *Noe*, 1 Lea, 55; and *McCown* v. *Moores,* 12 Lea, 635, are authorities to support the bill of the infants. We do not think so. In the first case the bill was treated as an original bill to impeach a decree for fraud. In the other cases the bills were bills of review. Here the bill is simply an original bill to surcharge and falsify the settlements confirmed by regular decrees of the Chancery Court. The settlement made by Vaccaro as executor in the Probate Court is only *prima facie* correct (Code, § 4535), and is therefore subject to the attack of the bill of the infants; but it cannot be disturbed except on clear and satisfactory evidence. *Matlock* v. *Rice,* 6 Heis., 33. There is no evidence in the record

to impeach it, and it must stand as a correct settlement.

But, although the decrees of the Chancery Court in the original cause cannot be re-opened on the bill of the infants, they are before this Court for review on the appeal granted to complainant in that cause. True, the appeal was not a matter of right; but an appeal granted by the Chancellor, under § 3874 of the Code, from a decree determining the principles involved, and ordering an account, brings up the whole record for review, just as an appeal from a final decree. *Bomar* v. *Hagler*, 7 Lea, 85. The other errors assigned must therefore be examined on the appeal from the decree in the original cause.

We think the allowance made to the trustee for the management of the property is sufficient to compensate him for the care of the persons of the infants. The reference ordered by the Chancellor to ascertain what amount should be allowed will not be renewed. We agree with the Chancellor that no credit should be given the trustee for attorney's fees for services in this litigation. The will of Cicalla is very clear, and needed no construction, and the powers of the executor and trustee are ample and clearly defined. He could have made sales and investments in his discretion, without the decrees of the Court, and the necessity for administering the trusts in chancery does not appear.

We think, therefore, that the bill was improv-

idently filed, and that the suit was, as complainant in effect admits it, for his own benefit and protection. He is therefore not entitled to charge the fund of the infants for counsel fees in conducting the suit. The Court appointed counsel for them, who is paid out of the fund, and this is enough. We think, also, that much of the service shown to have been performed by counsel of the trustee was such as he could have performed himself. Having engaged counsel to act for him, he must individually bear the expense. 2 Perry on Trusts, Sec. 910; Schouler on Executors, Sec. 544.

But the decree goes too far in disallowing all credits for counsel fees in the settlement made in the Probate Court. A credit of $250 is given for attorney's fees. We have already determined that this cannot be disturbed; and the proof shows $175 paid to the attorney for services in other matters and suits. There is nothing to impeach the credit given for that amount, and it also will be allowed. The trust devolving on this testamentary trustee has been continuing for nearly twelve years, and is to continue till the marriage or arrival at age of testator's children. The property is valuable. It therefore seems reasonable that the trustee should have the benefit of counsel to advise him, and we think he should be allowed credit for $500 for counsel fees in addition to the amounts above named. He will therefore be credited with these three amounts. The Chancellor will determine this question in the future.

We have already said that this trustee has managed the estate prudently, and that it has prospered in his hands. Though guilty, as the Chancellor said, of a technical breach of trust in depositing the trust funds to his credit in his business house, we do not think that any wrong was intended; and no loss has resulted. We find, also, that there has been no unreasonable delay · in making investments. Under these circumstances, we are not inclined to punish· a faithful trustee for a technical breach of duty by charging him with interest in past transactions. In future the rule as to interest established by the Chancellor in the decree will govern, unless he shall, from varying circumstances, see proper to change it.

The final question is as to the appointment of a guardian. The testator selected Mr. Vaccaro to hold the property for his children till their marriage or arrival at age. There can be no doubt as to this. Then the property cannot be taken from his custody unless a breach of trust, or tendency thereto, is shown. *Bowling* v. *Scales*, 2 Tenn. Ch., 63; *Kerr* v. *White*, 9 Bax., 161.

There appears no danger to this fund, especially since the Chancellor has required the trustee to execute bond with security, in the sum of $40,000, for its protection. The custody of the property must therefore remain with the trustee. This trust, it is true, does not embrace the persons of the infants. Vaccaro is not a testamentary guardian, and has never claimed to be so by qualifying

as the law requires. Code, § 3365. Then, is there a necessity for the appointment of a guardian for the custody of the persons of the infants only? The oldest, Aurelia, is very nearly of age, and domiciled in a foreign country. The other two are now grown, or nearly so; the youngest being fourteen, or thereabout. The guardianship would involve additional expense, which should not be incurred unless necessary. The Chancellor has decreed that Mr. Vaccaro is a proper person to have the custody of the children. If, therefore, he is willing to continue his supervision of them, and to provide for their education and maintenance, as heretofore, out of the trust fund, with such compensation as the Chancellor may determine proper, a guardian will not be appointed. If he declines to do so when the cause is remanded, the Chancellor will then appoint a guardian.

The result is that the decree will be modified as indicated in this opinion, and is in other respects affirmed. The two causes were properly consolidated, and will hereafter be treated as one. The costs of the Court below already accrued will be paid as the Chancellor directed, and hereafter to accrue as he may direct. One-half of the costs of this Court will be paid out of the trust fund, and one-half by B. Vaccaro individually. The cause will be remanded, in order that the decree as modified may be carried out and the trust estate finally settled.

While concurring fully in the principle an-

nounced, that infants are bound by decrees in Chancery, I think an exception should be made as to settlements in guardianship and administration cases, and that the same rule should be applied as to settlements in like cases in the County Court. The latter the statute wisely makes only *prima facie* correct; and I think, as to infants, this rule should be applied in the Chancery Court. This seems to have been the view of the Chancellor, and I agree with him.