JOHN WALKER LEACH *et al. v.* VIRGINIA SWEPSON
COWAN *et al.*

(*Knoxville.*   September Term, 1911.)

1. **ADMINISTRATION.**   Executors are entitled to reasonable
   compensation under statute.
   Under the express provisions of statute (section 4037 of Shannon's
   Code), executors are entitled to reasonable compensation.
   (*Post, p.* 195.)

   Code cited and construed:   Sec. 4037 (S.); sec. 3142 (M. & V.);
   sec. 2301 (T. & S. and 1858).

2. **TRUSTS AND TRUSTEES.**   Trustees under wills are entitled
   to compensation without statute.
   Trustees under wills are entitled to compensation in this State,
   though at common law trustees were not entitled to compensa-
   tion for their services, and no statute giving trustees under
   wills compensation has been enacted.   (*Post, pp.* 195-198.)

   Cases cited and approved:   Coffee v. Ruffin, 4 Cold., 524; Daniel
   v. Fain, 5 Lea, 258; Vaccaro v. Cicalla, 89 Tenn., 70; Barney v.
   Saunders, 16 How., 541.

3. **WILLS.**   Bequests of "net income" of residuary fund does not
   charge the expenses of the administration and trust upon
   such income, when.
   Where the testator gave certain sums of money in trust, the
   income of which was to be paid to certain legatees during
   life, 'and then devised and bequeathed all the rest and residue
   of his estate in trust, "the *net* rents, interest, or income" of
   which was to be paid to his three nieces named, in certain por-
   tions, and upon their death, to their respective children during
   their lives; and appointed two of the said nieces, to whom the
   bulk of the estate was given, and a nephew, to whom a com-
   paratively small sum was given, joint executors and trustees

Leach v. Cowan.

under the will, with a provision for the appointment of their successors, but without any express provision for compensation, it is *held* that the word "net," used to qualify the "rents, interest, or income" payable to the said residuary legatees, if not inadvertent, does not show any intention on the part of the testator to impose upon the income thus given to them the burden of bearing all the expenses of the trust, including the compensation of the executors and trustees. (*Post, pp.* 188-193, 198-201.)

4. **TRUSTS AND TRUSTEES.** Testamentary trustees are entitled to compensation, though a bookkeeper performs the clerical work, and an attorney performs legal services.

Where the executors and testamentary trustees have given careful, diligent, and intelligent attention to the trust, and have borne the responsibility and burden of management devolved upon them, they are entitled to compensation, although many of their duties were performed by an attorney and a bookkeeper, where the bookkeeper did only clerical work, and where nothing was left for the attorney except what was usual under such circumstances. (*Post, p.* 201.)

5. **SAME.** Compensation of $3,600 per annum for management of a $750,000 trust, with a $50,000 income, is reasonable, when.

Where a complicated testamentary trust, amounting to about seven hundred and fifty thousand dollars, with an annual income of about fifty thousand dollars, is carefully, diligently, and ably administered and managed by the executors and testamentary trustees, an allowance of thirty-six hundred dollars per annum, made as compensation for three trustees collectively, is reasonable. (*Post, pp.* 202, 203.)

6. **ADMINISTRATION.** Settlements are prima facie correct, even as to amount of compensation allowed, when.

Settlements by executors, made in the county court after notice to all the parties, who were present in the person of their attorney and guardian, are *prima facie* evidence of their correctness, even as to amount of compensation allowed the executors,

Leach v. Cowan.

and can only be attacked by a bill to surcharge and falsify the accounts. (*Post, p.* 203.)

Case cited and approved: Matlock v. Rice, 6 Heisk., 33, 38.

7. **TRUSTS AND TRUSTEES.** Question as to jurisdiction of county court to pass their accounts is reserved.

The question whether the county court has jurisdiction to pass the accounts of testamentary trustees in cases other than upon the death, resignation, or removal of an old trustee and the appointment of a new one is reserved, and not determined, because it is not necessary to consider the question in a case, where the evidence satisfies the court that the allowance of compensation to such trustees, made by the county court settlement, was proper. (*Post, pp.* 203, 204.)

Code cited and construed: Secs. 3529, 3530, 5414 *et seq.,* 6031, 6070 (S.); secs. 2737, 2738, 4393 *et seq.,* 4982, 5004 (M. & V.); secs. 1979, 1980, 3648 *et seq.,* 4204, 4232 (T. & S. and 1858).

8. **SETTLEMENTS IN COUNTY COURT.** May be questioned by general bill, when; and can be questioned only by bill to surcharge and falsify, when; how infants are affected by.

Settlements in the county court in the usual course, without notice, while *prima facie* correct, may be questioned by a general bill without the necessity of surcharging and falsifying the accounts; but if notice is given, and, for a stronger reason, if the parties attend, there must be a bill to surcharge and falsify the account before it can be questioned. Infants who do not attend, by their guardian, the settlements in which they are interested, although notified, may question such settlements by general bill; but, if they attend by their guardians, they can only question such settlements by a bill to surcharge and falsify the account. (*Post, pp.* 205, 206.)

Cases cited and approved: Turney v. Williams, 7 Yerg., 172; Elrod v. Lancaster, 2 Head, 575; Milly v. Harrison, 7 Cold., 213; Shields v. Alsup, 5 Lea, 513; Cannon v. Apperson, 14 Lea, 581; Murray v. Luna, 86 Tenn., 332; Alvis v. Oglesby, 87 Tenn., 183; Evertson v. Tappen, 5 John. Chy. (N. Y.), 497, 511.

Leach v. Cowan.

9. **TRUSTS AND TRUSTEES.** Claim allowed in county court settlement, after full investigation by those adversely affected and represented, will not be stricken out, when.

Where one of the testamentary trustees presented a claim against the trust estate, which, before it was allowed in the county court settlement, was fully investigated by the other two testamentary trustees, who were very adversely affected by its allowance, and all parties in interest and adversely affected thereby were represented, and there was no fraud, and no new evidence was produced, the claim cannot be stricken out of the account, even under a bill to surcharge and falsify. (*Post, pp.* 204-206.)

10. **SETTLEMENTS IN COUNTY COURT.** Instance of bill to "surcharge and falsify."

A bill against testamentary trustees, charging mismanagement and seeking to hold them liable on various claims, complaining of the compensation allowed them and especially of an item paid on settlement of a claim of one of the trustees against the estate, is a bill to "surcharge and falsify" the account or settlement in the county court. (*Post, p.* 206.)

11. **PAYMENT.** Recovery of money paid or property conveyed under mistake of law, when and when not.

Money paid or property conveyed under a mistake of law may be recovered, where it would be unconscionable for the party who obtains the advantage in such transaction to retain it; but though there was a clear mistake of law, yet if the party benefited may retain the advantage in good conscience, neither the chancery court, nor a court of law will give relief. (*Post, pp.* 206, 207.)

Cases cited and approved: Drew v. Clarke, Cooke, 374, 380; Trigg v. Read, 5 Humph., 529, 532-535; Sparks v. White, 7 Humph., 86, 90; Farnsworth v. Dinsmore, 2 Swan, 38, 42; King v. Doolittle, 1 Head, 78, 84-88; Dalton v. Wolfe, 11 Heisk., 498, 502; Warren v. Williamson, 8 Bax., 427, 431; Spurlock v. Brown, 91 Tenn., 241, 261; Northrop v. Graves, 19 Conn., 548; Baker v. Massey, 50 Iowa, 399, 403.

Leach v. Cowan.

12. **SAME.  Same.  No recovery of claim of one executor and testamentary trustee allowed and paid after full investigation and representation of all the parties, when.**

Where one of the three· executors and testamentary trustees presented a claim against the testator's estate, evidenced by a check given to him by the testator (an uncle) as a marriage present, and was again taken possession of by the testator only to preserve it, and such claim was allowed and paid, after full investigation and representation of all the parties, the beneficiaries of the estate adversely affected thereby, and subsequently objecting to the item, stand in the attitude of one who.has made a voluntary payment of money, with knowledge of all the facts, and a court of equity will not grant relief, since said trustee can retain the money with a good conscience. (*Post, pp.* 207, 208.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.— HENRY HUDSON, Special Chancellor.

WEBB & BAKER, for complainants.

SHIELDS, CATES & MOUNTCASTLE, and R. H. SANSOM, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

Robert Redd Swepson died.on the 23d of March, 1902. Prior to that date, that is, on the 30th of November, 1901, he made and published his last will and testament, which was as follows:

Leach v. Cowan.

"I, Robert Redd Swepson, of Knox county, State of Tennessee, being of sound mind and disposing, memory, do make, declare and publish this, my last will and testament, hereby revoking all other wills heretofore made by me.

"1st. I hereby direct that my executor and executrixes, hereinafter appointed, pay, as soon after my death as possible, all of my just debts, which are few.

"2nd. It is my will and I hereby direct my executor and executrixes to proceed as rapidly as possible to close up all of my unsettled business and collect in all moneys due and owing to me by bond, bill, note, account, or in any other manner whatsoever and forthwith pay my debts, and place my estate in condition to be transferred to themselves as trustees, as hereinafter provided.

"3rd. I hereby give and bequeath to my cousin, John S. Field, Sr., of Virginia, as a mark of my esteem, the interest upon the sum of two thousand ($2,000) dollars, the same to be paid over to him for and during his natural life, the principal sum to be held and controlled by the trustees hereinafter appointed, and, upon the death of said John S. Field, the same to become part of my estate and pass under the residuary clause of this will.

"4th. It is my will and I hereby give and bequeath to my niece, Marian Hepburn Dodson, for the term of her natural life, and to her sole and separate use, free from the marital rights of any husband she may have, the sum of ten thousand ($10,000) dollars, the same to be invested, held and controlled by the trustees hereinafter

appointed, so as to preserve intact the principal, paying over to said niece the interest or income thereof so long as she lives.

"Upon her death said principal shall be and become a part of the trust estate created under the seventh clause or section of this will, and pass under said clause.

"5th. I hereby give and bequeath to my nephew, Ebenezer Hepburn Saunders, during his natural life, the full sum of twenty thousand ($20,000) dollars, the same to be invested, held and controlled by the trustees hereinafter appointed, so as to preserve intact the principal sum, said trustees paying over to my said nephew so long as he lives the interest or income thereof. Upon the death of my said nephew, said principal sum shall be paid over to his lawful issue, share and share alike, *per stirpes.*

"Should he die leaving surviving no child or children, or descendents of children, then said principal sum shall become a part of the trust estate created under the residuary clause of this will and pass under said clause.

"6th. I hereby give and bequeath to the children of my niece, Mary C. Leach, for and during their natural lives, the following sums:

"To John Walker Leach and Ann Swepson Leach, each the sum of twenty-five thousand ($25,000) dollars.

"To Robert Swepson Leach, the sum of seventy-five thousand ($75,000) dollars.

"Said respective sums to be invested, held and controlled by the trustees hereinafter appointed so as to preserve intact the principal sums, said trustees paying over to said three legatees, or to their guardian, if minors, the interest or income accruing on said respective sums, so long as each shall live.

"Upon the death of each, the principal sum upon which each is hereby given the interest shall be paid over to the lawful issue of each, share and share alike, *per stirpes.*

"Should either die leaving no lawful issue, then said principal shall go to the children of the other two legatees provided for under this clause, share and share alike, *per stirpes,* or in the event only one has children, then to such children share and share alike.

"Should all three of these legatees die, leaving no children nor lawful issue of children surviving, then upon the death of the last one, the said principal sums shall be paid over to the children or descendants of children of my nieces, Virginia Swepson Cowan and Lillian Swepson Spilman, share and share alike, *per stirpes.*

"7th. I hereby give, devise and bequeath all of the rest and residue of my estate of every nature, kind and character and description whatsoever and wherever situated to my executor and executrixes hereinafter appointed, as joint trustees to receive, hold, control and manage upon the following uses and trusts:

"The net rents, interest or income of this trust estate shall be paid semiannually to my three nieces— Virginia Swepson Cowan, widow of James D. Cowan, dec'd, Lil-

lian Swepson Spilman and Mary C. Leach, in the following proportions:

"To said Virginia Swepson Cowan, forty (40) per cent. of said net income.

"To said Lillian Swepson Spilman forty (40) per cent. of said net income.

"To said Mary C. Leach, twenty (20) per cent. of said net income.

"Said net income herein given to each of my said three nieces is given to the sole and separate use of each, free from the control and marital right of any husband either of them may ever have, and shall be paid over to each upon her individual receipts so long as each lives.

"Upon the death of said Virginia Swepson Cowan, the rents, interest or income of this 40 per cent. of the estate shall be paid over to her two children Robert Swepson Cowan and Jeannette Cowan and to any future children she may have, share and share alike, so long as either of said children, Robert Swepson Cowan or Jeannette Cowan is living.

"Upon the death of my said niece, Virginia Swepson Cowan and of both of her said children, Robert S. and Jeanette Cowan, the trust as to this part of my estate terminates, and this part of the principal shall go absolutely in fee to the then living children or lawful issue of children of my said niece, Virginia Swepson Cowan, share and share alike, *per stirpes,* and should there then be no living children nor issue of children of said Virginia Swepson Cowan, said principal shall go absolutely to the children, or issue of children of my other two

nieces, Lillian Swepson Spilman and Mary C. Leach, share and share alike, *per stirpes.*

"Upon the death of said Lillian Swepson Spilman the rents, interest, or income of this 40 per cent. of the estate shall be paid over to her two children, Robert Redd Spilman and Lillian Spilman and to any future children she may have, share and share alike, so long as either of said children. Robert Redd Spilman or Lillian Spilman, is living.

"Upon the death of my niece, Lillian Swepson Spilman, and of both of her said children, said Robert Redd and Lillian Spilman then the trust as to this part of my estate shall terminate, and this part of the principal shall go absolutely in fee to the then living children or lawful issue of children of my said niece, Lillian Swepson Spilman, share and share alike, *per stirpes,* and should there be no living children nor issue of children of said Lillian Swepson Spilman, said principal shall go absolutely to the children or issue of children of my other two nieces, Virginia Swepson Cowan and Mary C. McCreary, share and share alike, *per stirpes.*

"Upon the death of my said niece, Mary C. Leach, the rents, interest or income of this 20 per cent. of the estate shall be paid over to her three children, John Walker Leach, Ann Swepson Leach, and Robert Swepson Leach, and to any future children she may have, share and share alike, so long as either of said three children, John Walker, Ann Swepson and Robert S. Leach, is living.

"Upon the death of my said niece, Mary C. Leach, and of her three children, John W., Ann S., and Robert S.

Leach, the trust as to this part of my estate shall terminate, and this part of the principal shall go absolutely in fee to the then living or lawful issue of children of my said niece Mary C. Leach, share and share alike, *per stirpes,* and should there then be no living children nor issue of children of said Mary C. Leach, said principal shall go absolutely to the children or issue of children of my other two nieces, Virginia Swepson Cowan and Lillian Swepson Spilman, share and share alike, *per stirpes.*

"All legacies or devises, whether of a life estate or remainder, given under this 'seventh' clause or section of this my will to any of my grandnieces or their female issue are intended to be given, and are given to their sole and separate uses, as technical separate estate, free from the control or marital rights of any husbands they may ever have.

"8th. I hereby give express power and authority to the trustees hereinafter appointed, and to their successors in trust, to sell for the purpose of reinvestment, or for division, all or any part of the bonds, stock or real estate belonging to my estate, and in case of real estate to make proper deeds therefor, the purchasers not to be bound to see to the application of the proceeds, but all of the then trustees shall concur and consent to such sales.

"Upon the death, failure, or refusal to qualify, incapacity to act, or resignation of either of the trustees hereinafter appointed, or of their successors in trust, appointed as herein provided, then in either of said events

Leach v. Cowan.

the two trustees shall forthwith appoint, by a written instrument duly entered upon the court records of the county court of Knox county, Tenn., another trustee in the room and place of the trustee failing or refusing to qualify, incapable of acting, dying, or resigning, and such trustee so appointed from time to time shall have and be clothed with all the rights, powers and duties herein granted to and devolved upon all of those appointed herein, and all acts done by such shall have the same force and effect as if done by those herein appointed, and said trustee shall not be required to give bonds as such.

"9th. I hereby nominate, constitute, and appoint my nieces, Virginia Swepson Cowan and Lillian Swepson Spilman, and my nephew, Ebenezer Hepburn Saunders, the executrixes and executor, and joint trustees of and under this, my last will, and hereby expressly excuse and release each and all of them, and each and all of their successors, duly appointed as hereinbefore provided, from giving bonds either as executors or as trustees, having full confidence in those hereby appointed, and in those that may be appointed under the terms of this will.

"In testimony whereof, I, the said Robert Redd Swepson, testator, have hereunto set my hand and seal, at Knoxville, Tenn., this 30th day of November, 1901.

"ROBERT REDD SWEPSON.    [Seal.]"

In this will the defendants, Mrs. Virginia S. Cowan, Mrs. Lillian S. Spilman, and Mr. E. Hepburn Saunders,

were made executors and testamentary trustees, as appears from the ninth clause.

On June 24, 1904, the executors made their first settlement in the county court of Knox county, and on August 7, 1907, they made their final settlement, as executors, accounting for all moneys that had come into their hands. A decree was entered in the county court, confirming this final report, and discharging the executors from all further liability. Between the time of their qualification as executors and the date of their final discharge as such executors, they transferred large amounts of property to themselves as trustees under the will, and made sundry settlements as trustees in the county court. After their final settlement as executors, they dealt with the estate only as testamentary trustees.

The present bill was filed on the 5th of December, 1910, by John Walker Leach in his own right, Anne Swepson Leach and Robert Swepson Leach (minor children of Mrs. Mary C. McCreary, formerly Mrs. Mary C. Leach), suing by their guardian, the said Mrs. Mary C. McCreary; also Mary Elizabeth McCreary (minor child of Mrs. Mary C. McCreary), suing by her next friend, W. L. McCreary, and W. L. McCreary and his wife, Mrs. Mary C. McCreary, against the executors above mentioned, and the two children of Mrs. Cowan, Robert Swepson Cowan and Jeannette Cowan, and the husband of Mrs. Spilman and her four minor children, Robert Redd Spilman, Lillian Spilman, Sam Taylor Spilman, Martha Spilman, and also against Marian Hepburn Dodson.

The bill made many charges of mismanagement, etc., against the executors and trustees, seeking to hold them liable for various alleged shortcomings. The case was tried in the chancery court of Knox county, and the bill was dismissed. From this decree the complainants have appealed to this court, and have here assigned errors.

Of the various points alleged in the bill there remain for examination only the special matters now brought forward in the assignment of errors.

The first error assigned complains of the compensation allowed the executors and trustees; the second, of an item of $12,000 paid on the settlement of a claim of E. H. Saunders against the estate.

1. As to compensation.

The first contention under this head is that the executors and trustees, who are the same persons, are all appointed in the will, and all take an individual interest under the will; that the will makes no provision for compensation, and they accepted the trusts imposed by the will without any contract therefor; that under the common law trustees were not entitled to compensation, and there is no statute in Tennessee changing that rule as to any other except trustees under assignments in trust for creditors.

As to the compensation of the executors as such, this is settled by statute. It is provided in Shannon's Code, section 4037, that on settlement the executors shall be credited with a reasonable compensation, and such has been the universal rule applied upon this subject in this State.

As to trustees' compensation, it is true the common-law rule was as stated, and we know of no statute in Tennessee that directly affects the question. However, it has been the custom to allow such compensation in this State, and the validity of this rule or custom has been recognized in this State in the cases of *Coffee* v. *Ruffin*, 4 Cold., 524, *Daniel* v. *Fain*, 5 Lea, 258, and *Vaccaro* v. *Cicalla*, 89 Tenn., 70, 14 S. W. 43. Authorities elsewhere indicate that the English common-law rule has not been uniformly adopted in this country. In the American & English Encyclopedia of Law (2d Ed.), vol. 28, pp. 1032 and 1033, it is said:

"It is a fundamental principle of the English courts that trustees are not to be permitted to derive personal profit from the performance of the duties of the trust, and hence no compensation is allowed to them for personal services in the performance of their official duties, though involving personal trouble and loss of time, unless such compensation is provided for in the trust instrument, or by special contract. But even in England the trustee is allowed indemnity for all necessary expenses, including losses and charges. The effect is much the same as if compensation was granted to him."

"Although formerly this doctrine was, and at the present time is, in the absence of statutes, followed in some States, yet now in America and Canada, generally, a trustee, in the absence of any agreement or stipulation therefor, is allowed compensation by the court, where he has faithfully discharged his duties."

On page 1035 of the same book it is said:

Leach v. Cowan.

"Where there is no express contract regulating the compensation of trustees, the power of the court to refuse or allow compensation to trustees, or, if commissions are granted, to grade the amount allowed according to their discretion or judgment, as they may deem equitable in each particular case, is in all cases absolute."

In *Barney* v. *Saunders,* 16 How., 541, 14 L. Ed., 1050, it was said by the supreme court of the United States:

"The third exception is that the trustees should not have been allowed and credited by 5 per cent. on the principal of the personal estate, and 10 per cent. on the income, as was done by the auditor, and they should not be allowed any commission at all, either upon the principal or income of the estate; that in any event they should not be credited by any commission upon the amount of principal never collected, upon the amount of bank and other stocks."

"In England, courts of equity adhere to the principle, which had its origin in the Roman law, 'that a trustee shall not profit by his trust,' and therefore that a trustee shall have no allowance for his care and trouble. A different rule prevails generally, if not universally, in this country. Here it is considered just and reasonable that a trustee should receive a fair compensation for his services; and in most cases it is gauged by a certain percentage on the amount of the estate. The allowances made by the auditor in this case are, we believe, such as are customary in similar cases, in Maryland and this

district, where the trustee has performed his duties with honor and integrity."

It is insisted, however, that even if compensation be allowable as a matter of law, yet under a true construction of the will in question no compensation could be allowed, because it was the purpose of the testator to make the trusts created by the seventh clause bear all of the expenses of the trusts created under prior clauses. Under this construction it is insisted that the legacies to the Leach children in the sixth clause are to be held free, not only from contributing to the compensation of the executors and trustees, but also from the payment of taxes, repairs, improvements, and other expenses appertaining to the properties belonging to those interests. It is further insisted under the same construction that the share of Mrs. McCreary (formerly Leach) in the estates created by the seventh clause cannot be held liable for any part of the compensation. This extraordinary construction is based upon two considerations—the first, that the great bulk of the estate was given to Mrs. Cowan and Mrs. Spilman; and secondly, that the word "net" is used in connection with the incomes to be paid over to Mrs. Cowan, Mrs. Spilman, and Mrs. Leach under the seventh clause, and is omitted in respect of the legacies of the Leach children, and that of defendant Saunders, and of Miss Dodson and Mr. Field, appearing respectively in the third, fourth, fifth, and sixth clauses of the will.

Nothing can be inferred from the mere inequality of the legacies. For example, among the Leach children,

Robert Swepson Leach is given $75,000, and the other two only $25,000 each; while Mr. Saunders, who had lived in the home of his uncle as a member of his family more than twenty years, was given only $20,000, and Miss Dodson, who was related in equal degree to testator with Mrs. Cowan, Mrs. Spilman, and Mrs. McCreary, was only given $10,000. It was certainly not the intention of testator that the trustees should administer this large estate through its long continuance without compensation, on the ground that he had given two of them the greater part of the estate, since one of these trustees, Saunders, received only a small part of the estate, and the reason would not hold good as to him. Moreover, the eighth clause of the will provides for successors in trust to those named, and the testator could not have done otherwise than anticipate that such new trustees might be entire strangers to the legacies, and he could not have supposed that they could have been procured to act without compensation. Nor can any such potent significance be given to the use of the word "net" as claimed by complainants. It is perceived that under the seventh clause the trust does not cease upon the death of Mrs. Cowan, Mrs. Spilman, and Mrs. McCreary, but continues during the lives of their respective children, and as to these it is provided that upon the death of their mothers the "rents, interest, or income" of their respective shares shall be paid over to their children during their lives. Now, if the estates conveyed under the seventh clause of the will were to bear the burden of all of the expenses and support the legacies given under the

sixth clause, and this inference is to be drawn from the use of the word "net," no reason is perceived why the word "net" should have been omitted in this connection, and used in the former; that is, in connection with the names of Mrs. Cowan. Mrs. Spilman, and Mrs. Leach (now McCreary). To escape this conclusion it would have to be urged that the estates given under the seventh clause were to bear the expenses of the estates given under the sixth clause, only during the lifetime of Mrs. Cowan, Mrs. Spilman and Mrs. Leach (now McCreary). No good reason can be assigned for such a discrimination between the estates while in the hands of Mrs. Cowan, Mrs. Spilman, and Mrs. McCreary, respectively, and in the hands of their children. Under such construction, giving such force to the use of the word "net," it would have to be held that during the lifetime of Mrs. Cowan, Mrs. Spilman, and Mrs. McCreary the seventh clause would have to bear the expenses of and support the sixth clause, but that after the death of these three that clause, though still continuing, would be relieved of the burden, which would have to be assumed by the sixth clause; that is, the sixth clause would then have to support itself. We do not think any such remarkable consequences could be deduced from the use of the word "net" in the first part of the seventh clause, and its omission from the third, fourth, fifth, and sixth clauses. The evidence shows that the will was drawn by an able lawyer, Maj. C. E. Lucky, and if such a burden had been intended to be thrown upon the seventh clause of the will as the support of the legacies contained in the third,

fourth, fifth, and sixth clauses, it would have been expressed in clear terms, and would not have been left to be drawn as an uncertain and remote inference from the use of the single word "net." We are of the opinion that the use of that word was merely inadvertent, and that it could bear no such meaning as claimed.

What has been said covers both the matter of executors' compensation and trustees' compensation, since it is insisted by complainants that under the compensation claim there could be nothing allowed on either basis.

The assignment of error does not make the point that the compensation allowed was excessive, but does insist that the executors and trustees were not entitled to any compensation at all, because they performed no duties as executors and trustees, but that all of these duties were performed by the bookkeeper, whom they selected, Mr. John E. Hood, and by Maj. C. E. Lucky, their attorney, and subsequently by Judge Sansom, who succeeded Maj. Lucky. Upon this subject Mrs. Cowan, Mr. Saunders, Maj. Lucky, and Mr. Hood all testify. They show that the executors and trustees were diligent and careful in the discharge of their duties, and left nothing to the attorney, except what is usually left to attorneys under such circumstances, and that the bookkeeper did only clerical work. The responsibility and burden of the management of the estates rested upon the executors and trustees, upon whom it had been devolved by the will, and they have given careful, diligent, and intelligent attention to these interests ever since they were appointed.

While we have said no attack is made upon the amount of the compensation, except in the way that the executors and trustees were not entitled to any at all, yet we may add that the only evidence introduced on this subject—that of Mr. C. B. Atkin, a man of large affairs, and Mr. Hood, who was perfectly familiar with the estate and the work done—shows that the amount of the compensation, $3,600 per year for all the trustees, was reasonable when taken in connection with the large amount of the estate, about $750,000, the complexity of its affairs, the annual income, about $50,000, and the intelligence and the ability with which it has been cared for. Moreover, it is worthy of consideration that the ascertainment of the amount was only reached after anxious, careful, and even heated discussion between the executors and trustees themselves, attended by counsel. That there was a natural basis for difference of opinion and for discussion is obvious, when it is known that Mrs. Cowan and Mrs. Spilman were to pay about eighty per cent. of whatever compensation might be agreed upon, and Mr. Saunders, the third executor and trustee, was to pay only a fraction of such amount. Under such circumstances it is clear that they would not agree to pay Mr. Saunders practically out of their own pockets a considerable sum of money for a long series of years, unless the expenditure could be justified by the facts.

In addition, so far as concerns the fees paid to the executors as such, this has been settled under the administration proceedings in the county court of Knox county. These settlements were made, not only with no-

tice to all parties, but all parties were present in the person of their attorney, Maj. C. E. Lucky. He represented, not only the executors, but Mrs. Leach personally and as guardian of her children. Under such circumstances it certainly would not only be *prima facie,* but could only be attacked by a bill to surcharge and falsify the accounts, and under such bill could be disturbed only by evidence of a clear and satisfactory nature. *Matlock* v. *Rice,* 6 Heisk., 33, 38. There is not only no clear and satisfactory evidence impeaching the amount allowed, but all of the evidence is in its favor.

We have not found it necessary to consider the question whether the county court has jurisdiction, under section 5414 *et seq.* of Shannon's Code, to pass the accounts of testamentary trustees in cases other than upon the death, resignation, or removal of an old trustee, and the appointment of a new one. That the chapter in which these sections appear does apply to testamentary trustees, as well as others, we think is clear. These sections should be read in connection with sections 3529, 3530, 6070, and 6031. The jurisdiction of the county court, of course, may be limited to the special cases of resignation, removal, and appointment of trustees and settlement of the accounts of the outgoing trustees, and to that extent be concurrent with the same jurisdiction in the circuit and chancery court, without going further. Whether the jurisdiction of the county court is so limited, we say, as we have previously said, that we do not deem it necessary in this case to consider, since on

the evidence we are satisfied that the allowances made were proper.

The foregoing embraces all the matters contained in the first assignment, and that assignment, being without merit, must be overruled.

The second assignent makes the point that the executors wrongfully paid the sum of $12,000 to E. Hepburn Saunders, one of the executors and trustees, on a claim by him against the estate, consisting of a check alleged to have been given to Mr. Saunders by his uncle, the testator, upon his marriage in 1901. The circumstances under which this amount was paid are shown in the record to be these: When the will was opened by Maj. Lucky and read in the presence of the legatees, it was known that Mr. Saunders had this claim. Before the executors qualified, the facts of the matter were examined by Maj. Lucky, who represented the executors, and also Mrs. Leach (now Mrs. McCreary) and her children; she being their guardian. After full consideration of this matter and the evidence upon which the claim rested, it was decided by the executors, under the advice and with the consent of Maj. Lucky, representing them, as well as the Leach interest, that the debt should be paid. We may add that since this $12,000 came out of the estate passed by the seventh clause of the will, and therefore Mrs. Cowan and Mrs. Spilman were to pay eighty per cent. of it in a manner closely similar to the burden of the compensation above referred to, we may well believe the payment was not lightly or inconsiderately made from any point of view. The debt was

paid, and was entered on the accounts of the executors as a credit. A settlement based on the account was regularly made in the county court, with the knowledge of all parties, and in the presence of the representative of all, Maj. Lucky, who prepared the settlement, and it was so passed in the county court and confirmed. On this settlement there was a balance of over $35,000 found in the executors' hands, and final settlement was made by the executors, under which they turned over this balance to themselves as trustees under the will, and this was also made with the approval of Maj. Lucky, who still represented the Leach interest, but not at that time the executors, and he signed the settlement as attorney for Mrs. Leach.

The rule in this State is that a settlement in the county court in the usual course, although without notice, is *prima facie,* but may be questioned by a general bill, without the necessity of surcharging and falsifying the account. If notice is given, and *a fortiori* if the parties attend, there must be a bill of the character last mentioned before the account can be questioned; but infants who do not attend by their guardian may question by general bill, although notified; but, if infants attend by their guardian, the same rule will apply as in case of adults. *Alvis* v. *Oglesby,* 87 Tenn., 183, 10 S. W., 313; *Murray* v. *Luna,* 86 Tenn., 332, 6 S. W., 606; *Cannon* v. *Apperson,* 14 Lea, 581; *Shields* v. *Alsup,* 5 Lea, 513; *Milly* v. *Harrison,* 7 Cold., 213; *Elrod* v. *Lancaster,* 2 Head, 575, 75 Am. Dec., 749; *Turney* v. *Williams,* 7

Yerg., 172; *Evertson* v. *Tappen,* 5 John. Ch. (N. Y.), 497, 511.

On the facts stated it appears there was a full investigation of this claim before it was allowed, no new evidence has been discovered, no fraud was committed, all parties in interest were represented, and the claim cannot be stricken out of the account, even under a bill to surcharge and falsify; and we think the present bill sufficiently full to meet that description. We deem it, therefore, unnecessary to review the merits of the particular claim and decide whether the parties acted correctly in agreeing at the time to its allowance. Under the agreement so reached the claim was allowed and paid. Under such circumstances the complaining parties will stand in the attitude of one who makes a voluntary payment of money, knowing all the facts, and subsequently sues to recover it. In cases of that kind, the general rule is there can be no recovery, even if there was no legal liability to pay in the first instance. As stated, we do not deem it necessary to review the merits of the controversy, or the question of legal liability, all of which were passed upon by the parties at the time of the settlement and payment. Under such state of facts, the account should not be reopened for examination of this claim.

We are not to be understood as holding that there is absolutely no case in which money or property paid or conveyed under mistake of law can be recovered. There may be such a recovery, even though the transaction was made under a mistake of law; but it must be under such

circumstances as the court can see that it would be un-
conscionable for the party who obtained the advantage
in such transaction or settlement to retain that advan-
tage, and *e converso,* although there was a clear mistake
of law, yet if the party benefiting by the transaction may
retain the advantage in good conscience, neither a court
of law nor equity will give relief to the complaining
party. *Warren* v. *Williamson,* 8 Baxt., 427, 431; *North-
rop* v. *Graves,* 19 Conn., 548, 50 Am. Dec., 264; *Baker* v.
*Massey,* 50 Iowa, 399, 403, citing with approval Kerr on
Fraud and Mistake, p. 398. See, also, 1 Story's Eq. Jur.
(13th Ed.), section 111. In addition to *Warren* v. *Wil-
liamson,* supra, we have several cases in our reports
which illustrate the principle: *Drew* v. *Clarke,* Cooke,
374, 380, 5 Am. Dec., 698; *Trigg* v. *Read,* 5 Humph., 529,
532-535, 42 Am. Dec., 447; *Sparks* v. *White,* 7 Humph.,
86, 90; *Farnsworth* v. *Dinsmore,* 2 Swan, 38, 42; *King*
v. *Doolittle,* 1 Head, 78, 84-88; *Dalton* v. *Wolfe,* 11
Heisk., 498, 502; *Spurlock* v. *Brown,* 91 Tenn., 241, 261,
18 S. W., 868.

In the case now before the court, even if it be true
that Mr. Saunders could not have recovered the amount
of the check in the suit against the executors, because of
the absence of a technical consideration, yet there is no
doubt, under the evidence, that it was given to him by
his uncle as a marriage present, and was again taken
possession of by the latter only for the purpose of pre-
serving it. Under these circumstances Mr. Saunders
can certainly retain the money with a good conscience,
and the demand of the complaints is based upon strict

law merely, and is against conscience. Under these cir-cimstances, if a mistake was made, under the advice given by Maj. Lucky as representative of all the parties, and the subsequent payment of the claim by the execu-tors pursuant thereto, still a court of equity will not grant relief.

It results that this assignment, also, must be over-ruled, and the chancellor's decree in all things affirmed.