MURRAY *v*. LUNA.

(*Nashville.*    February 1st, 1888.)

1. ADMINISTRATION.    *Notes due from administrator.    Lien.    Satisfaction and discharge.*

    Notes due to an estate, and secured by a lien on lands, are not satisfied, nor the lien discharged, by the appointment of the debtor as administrator; nor is that result effected by his merely charging himself with such notes, after receiving them as assets, in the settlement of his accounts as administrator with the Clerk, without actual payment of the money.

2. SAME.    *Same.    Liability of sureties on administrator's bond.*

    For uncollected notes due to an estate from the administrator the sureties on his bond are responsible, if by the exercise of due diligence they could have been collected; otherwise the sureties are not liable therefor.

    (See 85 Tenn., 486.)

3. SAME.    *Accounting.    Ex parte settlements.    Surcharging.    Evidence.*

    Settlements of an administrator made with the Clerk *ex parte*, without notice to or appearance of the parties interested in the estate, are, at most, only *prima facie* evidence in his favor in a proceeding attacking them and seeking an account.

    (See 14 Lea, 581, 582, as to frame of bill for this purpose.)

---

FROM MARSHALL.

---

Appeal from Chancery Court of Marshall County. W. S. FLEMING, Ch.

JONES & MURRAY for Murray.

WARREN & THOMPSON for Luna.

CALDWELL, J.   James Luna died testate in Marshall County in 1872.   J. B. Tally was duly appointed and qualified as administrator, *cum testamento annexo*, of his estate, and, in accordance with the terms of the will, he sold the lands of the testator, and performed other acts of administration.

Some of the land he sold to Peter Luna on time, taking his notes for the purchase-money, and retaining a lien on the land to secure their payment.

Before the administration was completed Tally died, and Peter Luna was constituted administrator *de bonis non*, with the will annexed, of the same estate.   Among other assets coming to Peter Luna's hands, were the notes executed by himself to the former administrator for the land.   For some reason, not disclosed, the sureties on the bond of Peter Luna became dissatisfied with his management of the estate's business, and notified him to give other sureties; and upon his failure to do so, the County Court declared his office vacant, and ordered him to appear and pass his accounts. Some months thereafter, in response to a special notice of the Clerk of that Court, he did appear before the Clerk and make a settlement.

After this time, J. J. Murray became administrator in the room and stead of Peter Luna, removed, and entered upon his duties as such.

The original and amended bills in this cause were filed in the Chancery Court at Lewisburg by Murray, administrator, etc., and some of the lega-

tees and devisees under the will, to surcharge and falsify the settlement made by Peter Luna, to recover from him the possession of the notes he executed to the first administrator for the land, and to enforce the vendor's lein by sale of the land for their payment.

Peter Luna and his sureties, answering together, insist that his settlement, which showed a balance of only $438.42 in his hands, is binding upon all persons concerned, and that his notes for the land have been paid.

Upon these pleadings and proof the settlement was opened by the Chancellor, and the cause was referred to the Master for a report and statement of all matters of account between Peter Luna, administrator, etc., and the estate of the testator.

Certain questions were adjudged upon exceptions to the report made under this reference, and the cause was recommitted to the Master for another report; and he was directed to give Peter Luna credit for all proper vouchers, including, of course, all such that he might have used in his settlement with the Clerk of the County Court.

The second report, which was confirmed without exception on his part, showed Peter Luna to be indebted to the estate in the sum of $1,486.94, and that $962.94 of that sum constituted the aggregate balance due on his notes for the land.

Decree was then pronounced against him and his sureties for the whole amount thus found to be due, and, to the extent of the unpaid purchase-

money, it was declared to be a lien upon the land, and the land was adjudged to be sold for the payment thereof.

From this decree Peter Luna prosecuted his appeal to this Court. The cause was heard before the Commission of Referees, and an affirmance was recommended in a report prepared by Judge Eakin.

The main question raised by the exceptions to that report, upon which the cause is now heard, is with respect to the alleged payment of the purchase-money notes of Peter Luna for the land bought by him from the first administrator.

The facts upon this point, as disclosed by the pleadings and proof, are that these notes were executed by Peter Luna to the first administrator, and secured by the retention of a lien upon the lands; that, after his qualification as administrator *de bonis non,* Peter Luna received these notes as a part of the assets of the testator's estate; that he charged himself with the balances due on them respectively in his inventory or report to the County Court; and that he thereafter retained possession of the notes, and regarded them as "his own private property."

Upon these facts, the contention in his behalf now is, that the "land was in fact paid for, and the notes taken up and charged against him as administrator," and "that he and his securities, as administrator, are alone liable for the same."

This position is clearly not tenable. In the first place, there is not even a pretense of an actual

payment of the money due on the notes, as would have been required of any other person by the administrator; and we think that the fact that Peter Luna occupied two relations with respect to this indebtedness—that of debtor in his individual, and that of creditor in his official capacity—cannot destroy the obligation to make actual payment.

Nor does the fact that these notes, with others, were by him reported to the County Court as assets of the estate, and charged against him in his general account as administrator, transfer the original liability from Peter Luna, individually, to Peter Luna, administrator; but the *status* of the debt was in all respects the same after that report and charge as before. As debtor, he remained responsible for the payment of the notes; and as administrator, he continued bound to exercise due diligence in their collection; and until payment was made there could be no satisfaction of the notes or extinguishment of the lien upon the land.

To hold otherwise would be to enable an administrator, who is indebted to the estate he represents, to discharge himself individually as debtor, and destroy all existing securities for the debt, and cast the burden of the debt upon his official bond, by simply reporting his indebtedness to the County Court, along with other assets of the estate. The law requires that he shall include his own note in his inventory of assets; hence, if the effect of such act be as contended by defendant, the estate may be made to suffer by the loss of its securities, and

his bondsmen to answer for the secured debt in every such case.

The cause before us presents a practical illustration of the justice of our holding, and at the same time suggests the unjust consequences that would flow from an enforcement of the contrary view.

Peter Luna's bondsmen are liable for the whole amount of the decree against him, but their liability for so much of it as is represented by his unpaid purchase-money notes arises from his failure to collect that indebtedness when it is shown that he could have done so, and not from any assumption that he collected those notes and failed to account for the proceeds. The proceeds of the land when the lien is enforced will, of course, inure to their benefit; or, if enforced and the money comes in before they shall have made payment, then the net amount of such proceeds will be credited upon the decree to the extent of the lien, giving them and the estate the advantage of the lien in either event.

The only other exception to the report of the Commission of Referees presents the same point made by exception to the first report of the Master, and goes to the action of the Chancellor in opening Peter Luna's settlement with the Clerk of the County Court, and directing the statement of an account in this cause. The insistence is that such action was erroneous, and that such settlement should have been treated as binding.

Whatever may have been the Chancellor's reasons for his action in that behalf, it is manifest that the action itself is abundantly justified by the pleadings and proof before him.

None of the legatees or devisees, nor any one else interested in the estate, had notice of the intended settlement, or was present when it was made. Hence, at most, that settlement could be only *prima facie* evidence in favor of the accounting party, Peter Luna. Giving it that verity in the fullest sense, it was subject to impeachment by bill, surcharging and falsifying. Such were the purpose and frame of the bills here, and the proof sustains the account as finally stated by the Master, making the indebtedness of the administrator about $1,000 more than it was stated to be in the settlement impeached.

Besides following the technical rules of practice for such a case, the decree below is commended for its justice.

The administrator did not except to the report of the Master, ascertaining the amount of his liability to the estate, nor does he now complain of that amount. His claim below was, and here is, that his settlement was improperly opened; not that the amount found against him, when opened, was too large.

The decree is affirmed, and the report of the Commission confirmed in all things.