STATE ex rel. WILSON et al. v. MEEK et al.—146 S. W. (2d) 961.

Eastern Section. Oct. 7, 1938.

Petition for Certiorari denied by Supreme Court, March 4, 1939.

494

J. C. Thomason, of Knoxville, for complainants.

Lee, Cox, Meek & Hier, Frantz, McConnell & Seymour, and J. Pike Powers, Jr., all of Knoxville, for defendants.

SENTER, J. This is a suit brought on relation of the State of Tennessee by Theron D. Wilson, guardian of Robert D. Cahill. The bill seeks to recover by the present guardian the physical possession of certain assets belonging to the ward and held by former guardians, and to surcharge and falsify the accounts and settlements of the former guardians and sureties on the guardian bonds of former guardians of said ward.

It is alleged by complainant that the ward, Robert D. Cahill, was adjudged mentally incompetent in September, 1919, and that shortly thereafter Clara Dell Cahill, the mother of said Robert D. Cahill, qualified as guardian, executing a guardian bond for the nominal sum of $250; that said Clara Dell Cahill subsequently received into her hands as guardian of said ward additional sums of money and executed additional bonds totaling the sum of $14,000. It is further alleged that Clara Dell Cahill died testate in October, 1930, and that Malcolm McDermott succeeded Clara Dell Cahill as guardian of Robert D. Cahill and executed a bond as such guardian in the sum of $15,000, with the defendant Aetna Casualty & Surety Company as surety thereon. Thereafter, on the 24th day of February, 1931, McDermott resigned as guardian of said ward and the defendant James M. Meek was duly appointed as guardian to succeed McDermott, and executed guardian bond in the sum of $5,000 with the Aetna Casualty & Surety Company as surety thereon.

It is further alleged that shortly after the death of said Clara Dell Cahill in 1930 her will was duly probated in the County Court of Knox County, Tennessee, and the defendant W. Baxter Lee qualified as the executor of her said will on October 14, 1930, and filed bond as such executor in the sum of $12,000 with the defendant Aetna Casualty & Surety Company as surety. It is further alleged that said Clara Dell Cahill left surviving her in addition to the said Robert D. Cahill, the ward, another son, John Cahill, and two grandchildren, Robert Lord, a minor, and Anna Lord, a minor. The said John Cahill, Robert Lord, and Anna Lord were made defendants, and were the legatees and devisees under said will; that at the time of the death of Clara Dell Cahill she was the owner of considerable personal property and was also the owner of certain real estate described in the bill, all of which went into the hands of her executor.

It is further alleged that the ward was a veteran of the World War and was totally and permanently disabled while in the service of the United States Army, and as a consequence became entitled to compensation benefits and insurance amounting to several thousand dollars.

It is charged in the bill that said Clara Dell Cahill, as guardian for her said son and ward, made unauthorized and injudicious investments of the funds of her said ward, resulting in considerable losses

of the funds of her said ward, and for which complainants seek to recover against her said estate and the sureties on her guardian bonds.

It is further alleged that Mr. McDermott succeeded Mrs. Clara Dell Cahill as the guardian of said estate and took into his possession the assets belonging to said ward; that he resigned the guardianship and that James M. Meek was appointed and qualified as the successor guardian of· said ward to Mr. McDermott and that there went into his hands certain assets belonging to the said ward and set out in the bill. It is further alleged that James M. Meek, the successor guardian, did not make any reports showing how he had invested and handled the funds of the said ward to the County Court of Knox County during the entire time of his guardianship although frequently requested to do so by the Veterans' Administration Bureau, and failed and refused to make any reports or settlements even though ordered and directed to do so by the judge of the County Court of Knox County, and that because of his failure to make reports as required by the law and as ordered and directed by the court that he was finally removed as guardian and complainant was duly appointed to succeed him as the guardian of said ward; that he never made any reports of any kind or character to the County Court of Knox County as guardian of said ward, and not until after the bill was filed in this cause did he make any report.

It is further charged in the bill that said James M. Meek neglected and failed to prosecute any claim or claims against the former guardian for the unauthorized and illegal investments made by the former guardian, Mrs. Cahill, of the funds of said ward; that he made certain illegal and unlawful and unauthorized ' investments of the funds of his said ward during the term of his guardianship, resulting in substantial losses, and charges Meek with particular investments and handling of the funds of the said ward, alleged to have been illegal, unauthorized and unlawful investments.

All the defendants filed answers to the bill, except the National Surety Company, which was then in the hands of a receiver, and the defendant, John Harold Cahill, a nonresident, upon whom service was had by publication, and order pro confessos taken as to those defendants. The grandchildren were served with personal process and a guardian ad litem appointed to represent them in the cause. All the defendant surety companies admitted suretyship on the respective bonds, but denied any liability by reason thereof. All the defendants denied the material allegations of the bill with reference to the alleged unlawful and unauthorized investments made by the respective guardians, and their acts and conduct as guardians and sureties on the guardian bonds.

At the hearing of the cause the bill was dismissed as to all the defendants except the defendant James M. Meek and sureties on his guardian bond, and a decree was entered against said Meek and

his sureties for certain interest on the funds and certain amounts admitted by him to still be in his hands, but which it was held that he had duly tendered to the complainant as the successor guardian.

From this decree the complainants have appealed, except as to the amounts decreed against said Meek and surety on his guardian bond, and the appeal has been duly perfected and errors assigned. The action of the Chancellor is dismissing the bill as to McDermott and sureties on his guardian bond was not excepted to and no appeal prayed as to him.

The relief sought against W. Baxter Lee is to impound the property held by him as the executor of the will of Mrs. Clara Dell Cahill, and to have so much of same as necessary to satisfy the claim or claims against her estate by the present guardian applied to any decree or judgment that may be rendered against her personal representative and sureties, and to the same end were the legatees and devisees under her will made defendants.

The investments of the ward's funds made by Clara Dell Cahill as guardian of the funds of the ward are as follows: $8,000 invested in the bonds of Alex McMillan Company, an unincorporated concern, beginning with the purchase of $1,000 of said bonds on June 4, 1926; $3,000 on September 29, 1928; and $4,000 on January 3, 1929. That Clara Dell Cahill used $2,000 of the funds of her ward for the purchase of 20 shares of the preferred stock of Cities Service Company, sometimes referred to as Knoxville Gas Company stock, the Knoxville Gas Company being a subsidiary of the Cities Service Company. That Clara Dell Cahill had on savings account for the benefit of her ward in the Holston-Union National Bank of Knoxville the sum of $721.05; that she also had on hand in checks of the United States government (apparently uncashed) $677.80.

It is charged in the bill that each of these investments were illegal and unauthorized by the judge of the County Court or any other court. That the said Alex McMillan Company was a partnership, composed of Alex McMillan, Robert L. Foust, and A. A. Schmid, and that the bonds referred to were the personal obligations of the partnership firm, and that there was no direct security or special mortgage back of any particular bond, but that a whole series of bonds was issued, which has as blanket security therefor mortgages on various located parcels of property in an amount equal to the series of the bonds, and that said mortgages, as blanket security, were deposited with the trustee who issued some form of certificate as to the quantity of bonds outstanding. It being alleged that the mortgages constituting such blanket security were against various parcels of property and that such mortgages, or the loans secured by such mortgages were made upon appraisals by the various members of the partnership, whose obligations the bonds were, and that disinterested appraisers were not used in appraising the value of the property

securing the series of bonds; that said purchase of said bonds and the securities thereof was not authorized by the judge of the County Court, as required by the statute governing the investment of the funds of a ward. It being further contended that the Alex McMillan Company went into federal receivership on September 20, 1930, and that its bonds were only worth around $0.15 on the dollar. It is further alleged by complainants that Clara Dell Cahill did not procure the authority of the judge of the County Court or any other legal authority to make the investments complained of, and resulting in substantial losses of her ward's funds, and that they were not such investments as are authorized by the Tennessee statutes.

The contention is further made by complainants that Clara Dell Cahill wrongfully and illegally misused $2,000 of the funds of her ward in the purchase of the twenty shares of the preferred stock of the Cities Service Company; that said stock is not of the nature and type of investment of a ward's funds as is authorized by the Tennessee statutes on the subject; that ultimately the County Judge of Knox County, upon petition of James M. Meek, the successor guardian, sold the stock and the estate suffered a loss of $346.30 by reason of the investment.

It is further contended by complainants that the savings account in the Holston-Union National Bank in the sum of $721.05 was an illegal and unlawful investment of the funds of the ward, and was unauthorized by the County Judge of the County Court or any other court. It being further contended that upon the liquidation of the Holston-Union National Bank only 45 per cent had been paid to the depositors, and that the estate of the ward suffered a substantial loss by reason of that investment.

The contention of complainants with respect to the guardianship of Clara Dell Cahill is that these investments referred to resulting in substantial losses to the estate of her ward are recoverable against her estate and her sureties and that judgment should be decreed in favor of the present guardian for the amount of said losses so sustained; that said losses should be paid out of the estate of Mrs. Cahill by the executor of the will of Mrs. Cahill before distribution is made to the legatees and devisees under her will; that the surety companies on her guardian bonds are also liable to complainants for said alleged losses resulting from said unauthorized and illegal and unlawful investments by Mrs. Cahill as the guardian of said ward.

The contention is further made that these assets coming into the hands of James M. Meek as the successor guardian, having been turned over to him by the executor of the will of Mrs. Cahill, he was negligent in failing to exercise proper diligence in prosecuting a claim to recover from the estate of Mrs. Cahill, the amount of these losses. The further contention is made by appellants that after qualifying as guardian of said ward, defendant Meek made certain illegal, un-

lawful and unauthorized loans of the funds coming into his hands as guardian, in that he loaned to H. E. Rogers and wife on March 4, 1931, the sum of $1,000, and as security therefor took a mortgage on a house and lot, the said note being payable one year after date, with interest thereon payable semiannually; that although the interest on said note was payable semiannually, no interest had been collected on said note, and that nothing whatever had been paid on the principal, and that said guardian had not taken any steps to foreclose the mortgage securing the said note, although he had been unable to collect the interest or principal during the period of five or more years, and in spite of the fact that he had made frequent demands for the payment of the interest and principal; that said guardian, Meek, at the time he made the loan did not obtain a written appraisal of the property as required by the Tennessee statutes, and did not make application to any court to have disinterested parties named as appraisers for the purpose of appraising the property; that he did not make any application to the Chancery Court or County Court to approve said action in making the loan; that he did not have the title to the property guaranteed and that said loan was therefore unlawful, illegal, and unauthorized; and that any loss sustained by the ward by reason of said loan is recoverable in this suit against said Meek as guardian and sureties on his guardian bond.

It is further contended, with respect to the guardianship of defendant Meek, that on June 23, 1931, he loaned to J. J. Conner the sum of $3,150, taking from him a note payable one year after date with interest payable thereon semiannually, said note being secured by a mortgage on real estate in the city of Knoxville; and that although a period of approximately five years had elapsed he had not collected anything on interest or principal although he had made frequent demands for the payment of both interest and principal, and that he had·taken no steps to foreclose said mortgage on account of the failure of J. J. Conner to pay the interest and principal; that in making said loan the guardian did not obtain any written appraisal of disinterested parties of the real estate mortgage securing the loan. He did not make any application to any court to have said loan approved; that he did not have the title to said property guaranteed before making the loan; that he did not make application to any court to have disinterested parties named as appraisers for the purpose of appraising said property.

It being further contended that, during the trial of this cause in the Chancery Court, upon motion of the defendants, the said Meek and Lee were permitted to testify orally during the oral testimony of Meek he offered in evidence as Exhibit I to his oral testimony what purported to be a nunc pro tunc order of the County Judge of Knox County approving the foregoing mortgages; that said order was procured by the defendant from the County Judge of Knox County

during the trial of this cause in the Chancery Court of Knox County, without notice to the parties representing the complainants and in an ex parte proceeding; that said two loans were not made according to the provisions of the Tennessee statutes on the subject for the reasons above stated.

It being further contended that the nunc pro tunc order of the County Judge, entered long after Meek had been discharged and removed as the guardian of said ward, and not made until after the whole matter had been transferred to the Chancery Court of Knox County, that the judge of the County Court was without authority or jurisdiction to enter the nunc pro tunc order approving the loans upon an alleged appraisal by two other disinterested parties; that said belated attempt of said Meek to comply with the Tennessee statutes did not constitute a compliance with the statutes, and that said nunc pro tunc order was void for the reasons stated and could not operate to relieve said guardian from liability on the said unauthorized loans, and that both Meek and sureties on his guardian bond would be liable to the estate by reason of said unauthorized and illegal loans.

Appellants also contend that certain deposits made by Meek in banks that afterward failed were the liability of Meek for the losses resulting, because the funds of the ward were permitted to remain on deposit and without security for more than four months, and that this was a violation of the statute requiring the guardian to keep the funds of his ward invested; that the loss resulting, including the interest thereon, should be adjudged against defendant Meek and sureties on his guardian bond.

Other questions are presented under the assignments of error and will be disposed of in discussing the assignments of error.

At the hearing of the cause the Chancellor dismissed the bill as to all the defendants except the defendant James M. Meek and the surety on his guardian bond, the Aetna Casualty & Surety Company, and decreed judgment against James M. Meek and the Aetna Casualty & Surety Company, surety on his guardian bond, as follows: The sum of $250.25, being interest to May 1, 1937, being the amount of interest at the rate of 4 per cent on the amount of funds received by said Meek, which he failed to invest within four months after its receipt; the sum of $23.26, which is interest on the Adjusted Service Certificate of Robert D. Cahill, in the principal amount of $846, at 3 per cent per annum from and after June 15, 1936, the date upon which the said Adjusted Service Certificate could have been converted into bonds bearing interest at the rate of 3 per cent per annum; the sum of $32.87, interest on the sum of $402.50, representing the amount of cash on deposit in the Hamilton National Bank of Knoxville to the credit of James M. Meek, Guardian, at the time the said Meek was discharged as Guardian, and the said Wilson was appointed successor guardian, being interest from and after April 21, 1934, the same

being the date of the filing of this bill, until May 5, 1936; the sum of $20.21, being interest on dividend checks from the East Tennessee National Bank in the amount $213.72 at 4 per cent per annum from December 22, 1933, until May 5, 1936; the sum of $2.58, which is interest from the 12th day of July, 1934, to May 5, 1936, on the sum of $36.05, being the amount of the dividend check received by the said James M. Meek from the Holston-Union National Bank belonging to the estate of his ward, Robert D. Cahill, which said check has never been cashed by the said James M. Meek.

The Chancellor had delivered to the Clerk and Master the following assets and securities belonging to the estate of Robert D. Cahill:

"Adjusted Service Certificate No. 2687431 in the amount of $846.00.

"Dividend check of C. H. Baker, M. O. Cowan, & Charlton Karns, Trustees, in amount of $164.40.

"Dividend check of C. H. Baker, M. O. Cowan, and Charlton Karns, Trustees, in the amount of $49.32.

"Certificate of indebtedness of Trustees of East Tennessee National Bank, No. 14603, in the amount of $1,644.04.

"Certificate of receiver of Holston-Union National Bank in the amount of $727.56.

"Alex McMillan Company first mortgage bond No. 499 in the amount of $4,000.00.

"Alex McMillan Company first mortgage bond No. 313 in the amount of $1,000.00.

"Account in Hamilton National Bank $402.50.

"Fidelity-Bankers Trust Company first mortgage bond No. 95, in the amount of $1,000.00.

"First Mortgage note of J. J. Connor bearing date June 23, 1931, in the amount of $3,150.00.

"Fire Policy No. F-5017, Hartford Fire Insurance Co., in the amount of $3,000.00 covering property securing J. J. Connor note.

"First mortgage note, H. E. Rogers and Lelia Rogers, dated March 14, 1931, in the amount of $1,000.00.

"Trust Deed dated March 14, 1931, securing same."

The Chancellor directed the Clerk and Master to deliver the above-mentioned assets to the present guardian, complainant, Theron D. Wilson, and decreed that said James M. Meek, Guardian, "is released and discharged from any other or further liability for said assets, and the Aetna Casualty & Surety Company, surety on his bond, is discharged from any other or further liability as surety on the bond of the defendant, J. M. Meek, Guardian, for said assets."

He further decreed that in accepting said assets, the complainant, Theron D. Wilson, was not to be charged with any other or further liability or responsibility than to protect, preserve and collect said assets and convert them into other lawful securities as soon as he may be able to do so, and the acceptance of said assets by him as guardian

was without prejudice to any rights which he might have in the premises.

The costs of the cause were adjudged, one-fourth against James M. Meek, and the remaining three-fourths were adjudged against the complainant and the sureties on his prosecution bond.

From the decree of the Chancellor dismissing the bill as to all other defendants and in limiting the recovery against Meek and surety on his guardian bond to the items of interest as above set forth in the decree, the complainants prayed an appeal to this court, which appeal has been duly perfected and errors assigned, except as to the action of the court in dismissing the bill as to the defendant, former guardian Malcolm McDermott, and surety on his guardian bond. The defendants, Meek, and surety on his guardian bond, have prayed an appeal from so much of the decree as decreed recovery against Meek and the surety on his guardian bond for the amounts above set forth. However, the appeal by the said two defendants was not perfected.

The assignments of error by appellants are numerous, but in view of the case we have taken it does not become necessary to take up and dispose of the assignments of error in the order made, since some of these assignments do not become material in the view of the questions presented. The first, third, fourth, and fifth assignments are especially directed to the action of the court in dismissing the bill as to the defendant, W. Baxter Lee, executor of the will of Clara Dell Cahill, and surety on the guardian bonds of Clara Dell Cahill, and the devisees and legatees under her will. Under these assignments it is contended, first, that the Chancellor erred in holding that the investments by Clara Dell Cahill, Guardian, in the Alex McMillan Company bonds were lawfully made and legal investments; second, that the Chancellor erred in holding that the investment made by Clara Dell Cahill, Guardian, in the Cities Service preferred stock was lawfully made and a legal investment; third, that the chancellor erred in holding that the investment made by Clara Dell Cahill, Guardian, in the savings account in the Holston-Union National Bank in the sum of $721.05 was lawfully made and a legal investment; and, fourth, that the Chancellor erred in holding that the action of the County Judge in confirming the annual accounts filed by the guardian, Clara Dell Cahill, which said reports showed therein certain investments, constituted res adjudicata, and that the Chancery Court was without jurisdiction in the premises, and in holding that the suit was an attempt to attack collaterally the action of the County Judge in confirming the annual settlements, and that the Chancery Court was without jurisdiction.

We will first take up and dispose of these assignments of error which involve the three items referred to, the investments of the ward's funds in the $8,000 of bonds of the Alex McMillan Company; the $2,000 investment of the funds of the award in the preferred stock

of the Cities Service Company, and the $721.05 savings deposit in the Holston-Union National Bank of Knoxville, Tennessee.

It is the contention of appellants that these investment so made were unlawful, illegal, and unauthorized and that said guardian, Clara Dell Cahill, and sureties on her guardian bonds are liable for any and all losses resulting to her said ward from said investments.

It appears that Mrs. Cahill first invested the sum of $1,000 in these bonds. She later invested $3,000 additional of her ward's funds in these bonds, and subsequently she invested $4,000 additional in these bonds, aggregating the total sum of $8,000. It appears that the Alex McMillan Company was an unincorporated concern, that the series of bonds in which the $8,000 was included was secured by real estate mortgages on various parcels of real estate owned by this concern.

There is no claim made that Clara Dell Cahill procured or sought to procure from any court the authority to make these three investments, except that in her annual reports and settlements these investments were included, and that the judge of the County Court of Knox County approved her annual settlements by noting his approval at the bottom of the settlement sheets after they had been filed with the County Court Clerk of Knox County.

It is the contention of appellees that the approval by the Judge of the County Court of these three investments, as reflected by her reports and settlements to the County Court, met the requirement of the law and that his action in that behalf constituted res adjudicata, and hence the Chancellor was without jurisdiction to entertain the bill seeking to hold the estate of Mrs. Cahill and sureties on her guardian bonds liable for any losses resulting. It being further contended by appellees that at the time these investments were made they were regarded as safe investments, and that any losses resulting from these investments, they having been approved by the County Judge, relieved Mrs. Cahill and the surety on her guardian bonds of liability.

The record discloses that Clara Dell Cahill made her reports and settlements to the County Court of Knox County punctually. There is no effort by complainants to show that she personally profited by any of these three investments. It is not contended that she concealed or sought to conceal any of these investments in making her reports, or that she did not accurately report all the funds coming into her hands and the investments made by her of the funds of her ward. We think the record reflects that she made these investments in the utmost good faith and that she promptly made her reports and settlements with the County Court of Knox County and that these reports accurately, honestly, and fully disclosed the true facts with respect to the funds coming into her hands for her ward and the investments made of her ward's funds.

With respect to these three investments, which are all the items of this guardian challenged as to her, the only question presented for determination on this appeal is whether or not these investments made by her were authorized under the provisions of the Tennessee statutes on the subject of the investment of the funds of a ward by a guardian, and also under the provisions of the Uniform Veterans' Guardianship Act, being Section 12 of said act brought into the Code at Section 8552.

Section 8496 of the 1932 Code, which is a re-enactment of Section 4280 of Shannon's Code, provides as follows: "Where the profits of a ward's estate shall be more than sufficient to educate and maintain him, the guardian shall lend the surplus, and all other sums of money of the ward in his hands, upon note with good and sufficient sureties, to be approved by the court at its pending or next session, and to be repaid with interest; or he may lend the same on the security of a mortgage or of a trust deed on real estate, the amount lent not to exceed one-half the actual value of the real estate mortgaged, and provided that said real estate shall have been valued, appraised and reported in writing by three disinterested parties appointed by the chancery, county or probate court of the county in which the land lies, upon application to the said court to that end, and approval thereby. But where the title to same shall have been legally guaranteed by some solvent person, firm, or corporation, the approval of the court shall not be required as above set out, except as to appraisal; provided, always, that no guardian shall lend his ward's money on real estate in which he has an interest either directly or indirectly."

By subsequent sections (Shannon's Code, sections 4281, 4281a1, 8497, 8498), provision is made for other authorized investments by a guardian of the funds of his ward; but these do not have application to the question here involved.

The Uniform Veterans' Guardianship Act, Chapter 62 of the Public Acts of 1929, Section 8552, provides as follows: "Every guardian shall invest the funds of the estate in such manner or in such securities, in which the guardian has no interest, as allowed by law or approved by the court."

This act was passed in Tennessee several years after Mrs. Clara Dell Cahill was appointed guardian of her said son, and the investments complained of in the present suit were made by her prior to the passage of the Uniform Veterans' Guardianship Act in this state, and the investments continued until her death which occurred in October, 1930. However, if it be said that she was acting under the provisions of the general guardianship statutes in making these investments, the fact remains that the Uniform Veterans' Guardianship Act and Section 12 thereof, on the subject of investments made by a guardian of a veteran's funds, does not embody additional restrictions, but makes provision that the investments already allowed by

law "or approved by the court" which gives an even broader authority to the guardian, in that it provides that not only investments already legal, but other investments where approved by the court are authorized.

It has been numerously held in this state that a guardian must comply strictly with the statutes in the manner of investing and handling the funds of a ward. We do not find in any of the cases where a substantial compliance with the law is sufficient. Perhaps the leading case on the subject is Woodard v. Bird, 105 Tenn., 671, 59 S. W., 143, and in which case other Tennessee cases are cited with approval. Other cases on the subject are Hammond v. Beasley, 83 Tenn. (15 Lea), 618; Murray v. Luna, 86 Tenn., 326, 6 S. W., 603; Henley v. Robb, 86 Tenn., 474, 7 S. W., 190; Vaccaro v. Cicalla, 89 Tenn., 63, 14 S. W., 43; Leach v. Cowan, 125 Tenn., 182, 140 S. W., 1070, Ann. Cas., 1913C, 188; Freeman v. Citizens' Nat. Bank, 167 Tenn., 399, 70 S. W. (2d), 25.

The three investments challenged by the assignments of error and now being considered certainly are not the type or character of investments authorized by the Tennessee statute on this subject. It is not contended that they are included among the authorized investments, but the contention is made that they were approved by the County Judge. It will be observed that the general guardianship statute as carried into the 1932 Code, Sections 8496, 8497, and 8498, made no provision for either of these three investments. We think it clear that the approval of a court of competent jurisdiction would have to be given before these investments could be authorized under the Uniform Guardianship Act, Code, sec. 8552.

We are further of the opinion that the mere approval of the annual reports by the County Judge could not operate to make these investments legal or lawful under the general statutes or under the Uniform Veterans' Guardianship Act, and Section 12 thereof. We think it was the clear legislative intent that in order to authorize any investments other than those specifically set out in the statutes and to make the same valid, that the approval of a court of competent jurisdiction would first have to be procured by the guardian. This appears to be the holding in Woodard v. Bird, supra. However, the most recent case on this subject and in which this direct question was involved is the case of McCuiston v. Haggard, reported in 21 Tenn. App., 277, 109 S. W. (2d), 413. While this case especially involves the construction of Section 12 of the Uniform Veterans' Guardianship Act, it has equal application to the investments made by a guardian of the funds of a ward under the general law. In the first headnote it is said: "Where incompetent war veteran's guardian invested veteran's funds in unsecured loans to corporations, not authorized by statute, right of action immediately accrued to ward and subsequent

506

approval of such investment by county court did not relieve guardian and his sureties from liability for losses thereon.''

In the second headnote it is said: ''Except as authorized by statute, a guardian is without authority to lend or invest ward's funds.''

In that case it appeared that the guardian invested the veteran's funds in loans to the American Trust Company and the Tennessee Valley Farms, Inc., and an investment of $8,000 in the bonds of the city of Dayton, purchased by the guardian from the Dayton Bank & Trust Company. This court speaking through Justice McAmis of the Eastern Section stated:

''Except as authorized by statute a guardian is without authority to lend or invest the ward's funds . . . and the question to be determined is whether the guardian has complied with the provisions of the statute above quoted, the effect of which is to authorized the guardian to invest the funds of the estate in two classes of securities. The first class includes securities authorized by statute and the second those approved by the court and which may or may not be sufficient to specifically comply with the statute.

''It is not contended that these loans fall within the first class but the insistence, sustained by the chancellor upon petition to rehear, is that the subsequent approval of the loans by the county court operates to relieve the guardian and his sureties from liability.

''We construe the statute as conferring upon the guardian complete and unrestrained authority to invest in such securities as are authorized by law but, as to securities not specifically authorized by law, he must first secure the approval of the court out of which the trust is being administered. The cardinal rule in the construction of statutes is to effectuate the legislative intent and an interpretation of a statute which defeats the manifest purpose of the act cannot be accepted. Hunter v. Harrison, 154 Tenn., 590, 288 S. W., 355. The general law (Williams' Code 1934, secs. 9596.1 to 9596.3, inclusive), regulating the form and character of investments by trustees, guardians, and other fiduciaries, is sufficiently comprehensive to include most of the bonds and securities generally regarded as the safest and most desirable and it seems unreasonable to assume that the Legislature, in its attempt to safeguard such investments, after specifically authorizing the investment of such funds in securities generally regarded as the most secure, should confer unlimited authority upon the guardian to invest in other securities without the approval of the court. As to all forms of investment not specifically authorized by law we think the Legislature intended that the guardian should act under the direction and supervision of the court. The general policy and purpose of the act, according to this construction, could not be accomplished if, as here contended by the guardian, such investments could be made by the guardian and his liability left to depend upon subsequent approval by the court. If so construed, an

unscrupulous or incompetent guardian by corrupt or unwise investments might accomplish the dissipation of the trust before his acts could be brought to the attention of the court. It might be argued that the ward would have his remedy upon the bond of the guardian, but this would require the expense of independent litigation, leaving the ward, meanwhile, without funds for his necessary support and maintenance. Such a construction seems to us out of harmony with the general purpose and policy of the act, and the construction that the guardian must first obtain the approval of the court before investing in securities not authorized by law seems to us clearly justified by the language of the act.''

In the case of In re Parker, 168 Tenn., 327, 77 S. W. (2d), 816, in construing Section 12 (Code, Section 8552) of the Uniform Veterans' Guardianship Act, it was held that although the investment there under consideration was not within the class specifically mentioned in the statute, but the approval of the court for the investment having been procured upon proper application made to the court before the investment was made, that it became an authorized investment by the guardian. That holding, however, was in construing the provisions of Section 8552 which provides for investments authorized by law, ''or approved by the court,'' and was authorized by Section 12 of said Uniform Veterans' Guardianship Act.

While there is no specific provision under the general guardianship statutes authorizing the investments such as the three now under discussion, we would be inclined to hold that if application was made to a court of competent jurisdiction before the investments were made, and the approval granted, the guardian would be protected, yet in the present case the guardian did not seek the approval of the court for these investments prior to the time the investments were made, or at any other time, except that she did include these investments in her reports to the County Court in her annual or biannual settlements.

It is contended by appellees and so decreed by the Chancellor that the fact that the County Judge did approve these annual reports, the effect of his action in so doing was to finally adjudicate these investments by his approval, and that the Chancery Court was without jurisdiction to review his action thereon. We cannot agree with this holding by the learned Chancellor. The original bill in this cause was filed to recover these assets for the ward and also to surcharge and falsify the guardian's accounts and settlements.

In 28 C. J., 1239, we find the rule thus stated: ''Annual or partial accounts of a guardian although approved by the court, have not the force and effect of a final judgment, and are in no sense conclusive of the correctness thereof unless made so by statute, although the rule has been qualified in some jurisdictions. These accounts may be reviewed and corrected at any time before final settlement, or on final settlement of the accounts, at which time the

guardian's whole administration of the trust is subject to challenge and examination.''

Woerner on the American Laws of Guardianship, at page 325, states: ''It seems clear on principle, and the current of authority unaffected by special statutory enactments, is decidedly to the effect, that the allowance by the court of a partial or periodical accounting or settlement, made by a guardian without notice to the parties concerned, and particularly where the ward has not been authoritatively represented, can constitute no adjudication, and is, therefore, conclusive of nothing, but operates as an admission against interest by the guardian.''

See, also, Hammond v. Beasley, 83 Tenn. (15 Lea), 618; Murray v. Yuna, 86 Tenn., 326, 6 S. W., 603; Henley v. Robb, supra; Vaccaro v. Cicalla, supra; Leach v. Cowan, supra.

■■ While it appears without dispute that Clara Dell Cahill as the guardian of her son, filed annual reports and settlements with the County Court Clerk punctually, and that each of these annual reports was approved by the County Judge of Knox County, and it also appears that the officials of the United States Veterans' Bureau, who are given authority by statute to examine and supervise the guardianship of veterans, were furnished copies of these annual reports and settlements filed by the guardian for each year to the date of her death, and it appears that they were approved by said officials, it also appears that these reports set out the securities in which the funds of the ward had been invested, including the three items herein challenged. We are of the opinion that these said annual settlements, even though approved by the Judge of the County Court in which the administration of this guardianship was being administered, would not be binding upon the ward who was not represented by attorney and no objection made thereto. It was purely an ex parte proceeding, and the approval of the Judge of the County Court was purely formal. We are further of the opinion that if these' investments were unauthorized by law, and no court of competent jurisdiction had authorized the investments before they were made, the mere fact that the County Judge subsequently approved the reports of the guardian could not operate to defeat the rights of the ward by a successor guardian to attack these investments as being unauthorized and illegal.

■ Conceding that these investments were made in all good faith by Mrs. Cahill, the guardian of her afflicted son, the fact remains that we must apply the same rules to her as would be applied to any other guardian under the same facts and circumstances. In this situation we are constrained to hold that the learned Chancellor was in error in dismissing the bill as to the estate of Clara Dell Cahill and her personal representative, the devisees and legatees under her will, and the surety on her guardian bonds. We are of the opinion that these investments were made by her at her own risk and the risk of her surety on her guardian bonds.

It follows that the assignments of error presenting the questions hereinbefore discussed are sustained.

We come now to consider the assignments of error directed to the decree of the Chancellor in limiting the recovery against James M. Meek and surety on his guardian bond to the amounts of interest hereinabove set out.

As hereinabove set out James M. Meek was the successor guardian and Mr. W. Baxter Lee, the Executor of the will of Clara Dell Cahill, turned over to him the assets set out in the schedule coming into his hands as the Executor of the will of Mrs. Cahill.

Certain of the assignments of error present the question that it was the duty of Meek, as the successor guardian, to institute suit against the estate of Clara Dell Cahill and surety on her guardian bonds for certain alleged losses resulting from the investment of the funds of the ward as hereinbefore set out, on the theory that these investments were illegal and unauthorized, and that her estate and the surety on her guardian bonds were liable for such losses.

In view of the above holding with respect to the guardianship of Mrs. Cahill and to the effect that her estate and the surety on her guardian bonds were liable for such losses as resulted from the investments complained of, we do not think that Meek and surety on his guardian bond should be held liable for the losses resulting from the three investments made by the former guardian of the funds of her ward, since we have already held that Mrs. Cahill and the surety on her guardian bonds are liable for such losses. The assignments of error presenting this question are accoringly overruled.

By the fourteenth assignment of error it is said that the Chancellor erred in holding that no recovery could be had against Meek and surety on his guardian bond on account of the investment of $1,644.04 deposit in the East Tennessee National Bank. It appears that this was not a time deposit nor a certificate of deposit, but was subject to withdrawal at any time by the guardian for purposes of reinvestment. The Chancellor only held him liable for interest on this deposit after the expiration of four months from the time the deposit was made. The Chancellor was of the opinion, and so decreed, that Meek would only be liable for the interest which accrued after four months, and gave judgment against him for the interest, but held that he was not liable for any loss resulting from the deposit. This holding by the Chancellor was on the theory that he had exercised sound discretion in selecting a depository for the funds of the ward.

We may take judicial knowledge of the general depression that reigned from about 1930 and continued for several years, and the general effect it had upon securities in general, such as stocks and bonds, and the general depreciation in property values, and especially with respect to the effects on banks during that period.

510

We may also take judicial notice of the fact that it was difficult for any fiduciary to select investments for a trust fund where he is charged with the duty of investing the funds in such securities as are authorized by law. It may be said that under the circumstances and conditions then prevailing Meek was warranted in not withdrawing this money from the bank after the four-month period for investment, and that this would excuse him from investing this fund and leaving it on deposit.

There are cases from other jurisdictions which have a material bearing upon this question. Among others is the case of Gross v. Butler, 48 Ga. App., 750, 173 S. E., 866, 867, decided February 24, 1934, and wherein it is said: ". . . Where the guardian has, in his fiduciary capacity, deposited the funds, subject to withdrawal by him at any time, in a bank of solvent reputation and which he has no reason to believe is insolvent and the funds, through no fault of his, are lost by the insolvency of the bank, he has thereby exercised the care and diligence required of him in the handling of the funds, and is not liable for their loss. . . ."

To the same effect is the case of Norwood, Adm'r, v. Harness, 1884, 98 Ind., 134, 49 Am. Rep., 739, wherein it was held: "With respect to losses sustained by the failure of bankers, or other persons into whose hands the money of the testator has been deposited by the executor, the rule, as least in equity, seems to be that when the deposit was made from necessity, or conformably to the common usage of mankind, the executor will not be responsible for the loss."

While the above Indiana case was with respect to the handling of funds by an administrator, and not a guardian, yet it would seem on principle that the same rule would apply.

In the case of Parsley's Adm'r v. Martin et al., 1883, 77 Va. 376, 46 Am. Rep., 733, it was said: "Being.thus again in his hands, he did not apply it to his own uses or mix it with his own funds; and, finding it impracticable to loan it out again to advantage, he did the only thing he could properly and safely do, viz: to put it on deposit in a perfectly safe and reliable bank in Richmond, upon six per cent. interest. This it was his right to do without asking for an order of court; all of his duty and responsibility being to see that his choice of depository was a prudent and safe one."

In the case of In re Grammel's Estate et al., decided by the Supreme Court of Michigan, and reported in 120 Mich., 487, 79 N. W., 706, in discussing this question it was held: "The length of time that he should permit a fund to lie in a bank must depend upon circumstances, and these circumstances may be as variable as the exigencies of the situation may be variable. Ordinarily it is the duty of guardians to invest funds with a view to their safety and increase. In so doing they are bound to the observance of fidelity, and such diligence as men of ordinary intelligence observe in managing affairs of their

own. . . . Counsel strenuously insist that the guardian should not have left this fund in the bank, where it drew but 4 per cent. interest, when, as they contend, it could have been loaned for more. The implied argument is that, if he had done his duty, the money would have been loaned upon real estate, and consequently would not have been in the bank at the time of the failure. In [Re] Post's Estate, Myr. Prob. [Cal.], 230, it was held that a guardian is not responsible for the loss of funds occurring by reason of the failure of a bank in which he had deposited the ward's funds, unless by the exercise of reasonable diligence and prudence he might have known it to be in an unsafe condition. See, also, Perry, Trusts, 443; 2 Beach, Trusts, 492, 499; In re Hunt, 141 Mass., 515, 6 N. E., 554. There are cases which indicate that deposits with bankers are permissible only for temporary purposes. . . . But, if we adhere to that doctrine, it is nevertheless true that the length of time that a fund may prudently be left with a banker depends upon the condition and reputation of the bank, and the duty of the trustee as to investing the fund. In this case there was evidence tending to show a sufficient reason for not investing it elsewhere, and raising a question of fact as to his negligence. This was passed upon by the circuit judge, and it is not our province to review his decision upon the facts. We cannot say that they conclusively show negligence, and therefore affirm the order of the circuit court.''

 The Tennessee statutes provide that a guardian shall invest the money of his ward within four months or else he will be charged with interest.

We are of the opinion that the guardian, James M. Meek, should not be held liable for the loss resulting from this deposit although he permitted it to remain there longer than four months without investing it. We think this deposit is to be distinguished from the $721 savings deposit made by Mrs. Cahill and hereinbefore discussed with reference to her guardianship, in that this deposit was a drawing account and the guardian could withdraw it at any time he found a desirable investment. Considering the depression, we cannot say that he was negligent in permitting this fund to remain in the bank. So far as the record shows, this bank was regarded as a solvent institution and that Meek did not have any notice or knowledge that it was in an insolvent condition until it failed and went into a receivership. In this situation we are of the opinion that he should not be held lable for the loss resulting from the deposit, and this assignment is accordingly overruled.

By other assignments of error the question is presented that Meek, as the guardian of said ward, made certain unauthorized and illegal investments of the funds of his ward, including the loans made to Rogers and wife and to J. J. Connor, and the alleged losses that would

result from these loans; and also for losses resulting from the bank deposits upon the failure of the bank.

It appears that Meek loaned to Rogers and wife the sum of $1,000 on March 14, 1931, taking the note of Rogers and wife for the said loan, bearing interest at the rate of 6 per cent per annum, interest payable semiannually, and took as security therefor a first mortgage on certain real estate; that he also loaned to J. J. Connor the sum of $3,150 on January 23, 1931, taking the note of Connor for said sum with interest at the rate of 6 per cent per annum, interest payable semiannually. This note was also secured by a first mortgage on real estate situated in Knox County. The real estate mortgages securing said respective notes are described in the record.

It also appears that at the time these loans were made Meek failed to comply with the statutory requirements with respect to having the property securing the notes appraised by disinterested appraisers; that he did not procure the approval of the Judge of the County Court of Knox County, or of any other Court. It further appears that Meek failed to make his annual reports annually as required by law, and in fact, he never made any reports to the County Court during the entire term of his guardianship. It appears that the County Judge made orders directing the filing of a guardian report, and that Meek succeeded in getting action thereon deferred, and finally, in 1934, the County Judge removed Meek as the guardian by order of the court and the present guardian was appointed as the successor guardian to Meek. It also appears that it was not until after the original bill in this cause had been filed, seeking relief against Meek and sureties on his guardian bond hereinbefore referred to, that Meek even attempted to make any report or any settlement. At the time of his removal as guardian he did not make any report whatever or any settlement with the County Court of Knox County, as guardian of said ward. At the time his deposition was taken in the present suit he offered to turn over to the successor guardian the various assets then in his hands belonging to the said ward, and this offer or ''tender'' was not accepted by the successor guardian, the complainant in this cause.

██ ██ When the cause came on to be heard Meek introduced as evidence an order referred to as a nunc pro tunc order, granted by the Judge of the County Court of Knox County, approving and ratifying the loans made to Rogers and wife and Connor, respectively. This order was procured while the cause was being heard in the Chancery Court. It also appears that after the cause had been heard by the Chancellor and he had announced his conclusions, but before the decree was entered, the defendant, Meek, by direction of the Chancellor, turned over to and delivered the assets of the ward then in his hands to the Court in this cause.

We will add that the so-called nunc pro tunc order of the Judge of the County Court approving the loans to Rogers and Connor, re-

spectively, which order was granted by the County Judge while the cause was being heard in the Chancery Court, was procured upon the appraisal of two disinterested appraisers, and the appraisals by the two disinterested appraisers were made while the cause was being heard in the Chancery Court. We will also add that it appears that Meek did not collect any part of the principal or interest on these two notes and did not take any steps to collect said two notes from the time they were made in 1931, although he had requested the payment of interest, but did not collect any part of the interest or principal although a period of five years had elapsed since the loans were made.

The learned Chancellor held and decreed that, in effect, the County Judge had the right and jurisdiction to give the order of approval of these two loans at the time it was given, and said order is referred to as a "nunc pro tunc" order.

We are of the opinion that the Judge of the County Court was without jurisdiction or authority to grant this order approving the two loans in question. In the first place, we do not see how the order could have been considered and treated as a nunc pro tunc order. As we understand, a nunc pro tunc order functions to have an order previously granted entered of record. In the present case there had been no action taken by the County Court at any time during the guardianship of Meek with reference to these two loans; no reports were ever made to the County Court of these two investments, and certainly there was no order made by the Court, but which for some reason had not been entered on the minutes. It was not an order intended to affect any former order or to have an order peviously granted put on the minutes. In the case of Lowder v. Anderson, 4 Tenn. Civ. App. (4 Higgins), 620, it is specifically held that a nunc pro tunc order is proper when a previous order has actually been made, and not to make a new order. Under the fourth headnote it is stated: "An entry on the minutes nunc pro tunc is proper only when the order has in fact been previously made and its entry omitted. It cannot be resorted to to make an order the making of which was previously omitted."

In the present case there is no insistence that this so-called nunc pro tunc order had actually been made at some previous time, but which for some reason was not entered on the minutes.

We are further of the opinion that the Judge of the County Court of Knox County had lost all jurisdiction of all matters pertaining to the guardianship of Meek after Meek had been removed as guardian and the suit in this cause instituted. The filing of the bill in this cause had the effect of removing the whole guardianship matter of Meek and his predecessor guardians of this ward to the Chancery Court where the cause was here being tried on the issues made by the pleadings. We are, therefore, constrained to hold that

the learned Chancellor was in error in holding and decreeing that by reason of the said so-called nunc pro tunc order that it was res adjudicata and could not be reviewed by the Chancellor. We are further of the opinion that it was the duty of the guardian in making said loans to comply with the statutory provisions, that is, to have had the mortgage security for said notes appraised by disinterested appraisers and then to submit the matter to the Judge of the County Court for approval. The guardian did not attempt to comply with this requirement of the statute with reference to making loans of the ward's funds on real estate mortgage securities.

However, complainants did not introduce any evidence, nor do we find anything in the record that would warrant a conclusion that the security given for these notes was insufficient, or that any loss whatever would result to the said ward by reason of these loans.

The conclusion we reach is that these two loans by Meek as said guardian were not made by him in compliance with the statutes governing the investment by a guardian of the funds of his ward; that at the time the loans were made they were unauthorized and made by the guardian at his own hazard and risk, and that if any losses resulted therefrom they would be the liability of the guardian and surety on his guardian bond.

There are numerous cases construing the Tennessee statutes on the subject, as well as the Uniform Veterans' Guardianship Act. The cases generally hold a guardian to a strict compliance with the statutory provisions with respect to the authorized investments of a ward's funds. Cope v. Cope, 5 Tenn. App., 169; Woodard v. Bird, 105 Tenn., 671, 59 S. W., 143; Bragg v. Osborn, 147 Tenn., 381, 248 S. W., 19, and cases cited and referred to therein.

Since the notes representing these two loans and the mortgage securities securing the same have been delivered into the Chancery Court by Meek, as above set forth, the question as to the action of the Chancellor in holding and decreeing that this absolved Meek and sureties on his guardian bond of personal liability, and what should have been the proper course to be taken by the Chancellor and the proper decree with reference to this matter, is presented for the determination of this court on this appeal.

While it is true no loss to the ward is shown to have resulted by reason of these two loans, the trust deeds securing these respective notes not having been foreclosed, and with the proof in the record that the property under proper appraisal shows a valuation in excess of the notes, and the notes having been turned over to the court or the successor guardian, the complainant herein, it is argued by appellees that the Chancellor's decree in this behalf was proper and meets the equities. However, the conclusion we reach is that if any loss is shown to have resulted to the ward by reason of these unauthorized loans that complainants would be entitled to recover in this cause

against James M. Meek and sureties on his guardian bond, the amount of such loss, if any.

We are further of the opinion that in the absence of proof as to any loss sustained by reason by these two transactions, and such losses, if any, could not be definitely ascertained until the foreclosure of the trust deed and the proceeds applied, or judgments taken against the makers of the two respective notes, with return of executions showing a loss, that the proper decree in this cause should be that Meek and sureties on his guardian bond are liable for these two loans, and that a judgment should be decree against James M. Meek and surety on his guardian bond for the amount of these two loans with interest thereon, and that upon the payment of said loans with the accrued interest according to the terms of the respective notes, or the satisfaction by James M. Meek of the judgment decreed herein against him and the surety on his guardian bond for said amounts, that the present guardian will endorse and redeliver to James M. Meek the respective notes and mortgages securing the same.

There are other assignments of error directed to the admission of certain evidence by the Chancellor and excepted to by complainants. In the view of the case we have taken, the questions presented by these assignments become immaterial.

It follows that the decree of the Chancellor dismissing the bill as to the estate of Mrs. Cahill and sureties on her guardian bonds is reversed. Since the record does not definitely disclose the amount of losses sustained by reason of the three items complained of, the cause will be remanded to the Chancery Court of Knox County to the end that an order of reference may be made to ascertain such losses, and when so ascertained to be made the basis of a decree against the executor of her estate in his capacity as executor, and the surety on her guardian bond.

The decree of the Chancellor with respect to the liability of James M. Meek and surety on his guardian bond is reversed as to the items and matters as hereinbefore set out, and the cause is remanded to the Chancery Court of Knox County as to said defendants, James M. Meek and Aetna Casualty & Surety Company, as hereinbefore set out, for the carrying out of said decree.

The costs of the cause already accrued, including the cost of this appeal, will be paid, one-fourth by appellants out of the funds in the hands of the guardian of said ward, and the other three-fourths to be equally divided, three-eighths to be paid by defendant James M. Meek and surety on his guardian bond; and three-eighths to be paid by the Executor of the estate of Clara Dell Cahill.

Future costs are to be fixed and adjudged by the Chancellor upon final decree in the Chancery Court of Knox County, Tennessee.

Ketchum, J., and Adams, S. J., concur.